The Haney Manufacturing Company (a Corpora-
tion) v. Gaius W. Perkins et al.

*Libel and slander—Publication—General and special damages—
Partnership—Liability of firm for slanderous words
of member—Evidence.*[1]

1. A partnership is liable for slanderous statements made by one
   partner, the purpose of which is to aid the partnership business
   by preventing another party from making sales of an article
   which the partnership is at the time selling.
2. Words spoken or written injurious to a person in his business,
   and false and malicious, are actionable *per se*, and special dam-
   ages need not be proved.
3. The fact that a plaintiff, in a slander suit, calls the defendant
   as a witness, who denies any knowledge of the alleged slander-
   ous statements or of their publication, will not, of itself, pre-
   vent the plaintiff from proving his case by other witnesses or
   circumstances, nor will the jury be debarred from drawing the
   natural and necessary inferences, from facts proven by such
   other testimony and circumstances, outweighing the positive
   statements of the defendant.
4. In this case it is held that the facts shown, and offered to be
   shown, by the plaintiff, raised issues which should have gone
   to the jury, and that under the evidence given and offered,
   which upon this record must be taken as true, the plaintiff was
   entitled to have the alleged libelous article placed before the
   jury; and that, under proper instructions, it was a question of
   fact for their consideration whether its publication was within
   defendants' knowledge, or whether they were responsible for
   it.

---

[*] Continued from Vol. 77.
[1] For full digest of points decided, see *Table of Cases Reported.*

Error to Kent. (Grove, J.) Argued October 8, 1889. Decided November 15, 1889.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Taggart & Denison,* for appellant, contended:

1. Payment to a newspaper, as for an advertisement, is evidence of the adoption of a libel; citing *Schenck v. Schenck,* 20 N. J. Law, 211; and proof of publication was held sufficient on no stronger circumstances in *Bent v. Mink,* 46 Iowa, 577–579.

2. Mere silence may be a ratification even if the act was done by a stranger; citing *Railroad Co. v. Cowell,* 28 Penn. St. 329; *Ladd v. Hildebrant,* 27 Wis. 135; *Mining Co. v. Bank,* 2 Col. 262, 263.

3. As to liability of a principal for libelous statement of agent, counsel cited *Express Co. v. Fitzner,* 59 Miss. 584; *Woodling v. Knickerbocker,* 31 Minn. 268.

4. Letter press copies of letters, written to parties outside the State, are competent to be introduced as evidence; citing *Vinal v. Gilman,* 21 W. Va. 313; *Elwell v. Mersick,* 50 Conn. 276; *Beattie v. Hilliard,* 55 N. H. 435; *Schaefer v. Georgia Railroad,* 66 Ga. 44.

5. As to the liability of a partnership for the slanderous words of one member, who is acting manager of the concern, counsel cited *Patten v. Gurney,* 17 Mass. 182; *Lothrop v. Adams,* 133 ᵀd. 481; *Glass Co. v. Paulk,* 83 Ala: 404.

*Taggart, Wolcott & Ganson,* for defendants, contended:

1. In an action for damages caused by alleged libelous statements as to one's business, only special damages can be recovered, that being the gist of the action; citing 2 Add. Torts, § 1143; *Pollard v. Lyon,* 1 Otto, 225; *Swan v. Tappan,* 5 Cush. 104; *Tobias v. Harland,* 4 Wend. 537; *Dooling v. Pub. Co.,* 144 Mass. 258.

2. A joint action for slander cannot be maintained; citing Townsh. Lib. & Sland. § 118; *Webb v. Cecil,* 9 B. Mon. 198; *Thomas v. Rumsey,* 6 Johns. 29–31; 1 Chit. Pl. 85; 2 Add. Torts, § 1140; Starkie, Sland. 448 (*334).

LONG, J. This action was brought by the plaintiff, a manufacturing corporation, to recover damages alleged to

have been caused by reason of the publication, oral, written, and printed, of the statement that the defendants had brought suit in the United States court against the plaintiff for an infringement of a patent, and had secured an injunction against it, and closed it up, which statements were claimed to be false and malicious.

The plaintiff is a manufacturing corporation, located at Grand Rapids, and engaged in making school-seats. The defendants are partners, under the name of the "Grand Rapids School Furniture Company," making substantially the same seats, and the two are competitors for the same trade throughout the country. Prior to July 9, 1886, defendants bought up an old patent on school seats known as the "Slaymaker Patent," and on that day defendant Perkins, claiming to own the same, filed a bill in the United States circuit court at Grand Rapids against the plaintiff, alleging that the seat made by the Haney Company infringed the Slaymaker patent. No injunction was asked or granted, and afterwards, on final hearing on the merits, the bill was dismissed.

The declaration by which the present action was commenced contains six counts. The first count charges that the defendants published the matter complained of in the newspapers of Grand Rapids, and caused such papers to be circulated generally among persons likely to purchase plaintiff's goods; and that they also published the same statements, in substance, by letters written by said defendants, and by them sent out by mail broadcast throughout the country, to any and every person whose name they could learn who was negotiating with plaintiff for the purchase of its goods.

The second count charges that the defendants made such statements in person and by their agents at their office in Grand Rapids, and by their agents throughout the country, to and in hearing of divers persons intend-

ing to purchase school seats of the plaintiff, and to the public generally.

The third count charges that the defendants caused such statements to be published in the Grand Rapids Telegram-Herald, a newspaper published at Grand Rapids, and circulating throughout the State of Michigan and elsewhere.

The fourth count charges that. the defendants made such statements in a letter addressed to one Elliott, and sent him at Council Grove, Kansas.

The fifth count charges that the defendants made such statements orally to a Mr. DeMoss and a Mr. Conrad, of Clinton county, Michigan.

The sixth count charges that the defendants made such statements to the school board of the village of Grand Ledge.

At the close of the trial in the circuit court, the court directed the jury to return a verdict in favor of the defendants, on the ground that the testimony offered by the plaintiff did not entitle it to recover.

It is insisted here by the counsel for the defendants that the testimony offered and that produced on the trial by the plaintiff, if true, would not constitute any ground of recovery; or, in other words, that there was nothing to go to the jury, and that the court was not in error in directing the verdict. Under the third count of the declaration, plaintiff produced a Telegram-Herald newspaper of July 15, 1886, containing an article stating that there was a lively competition between the Grand Rapids School Furniture Company and the Haney Manufacturing Company, and, among other statements, that the former company had secured an injunction against the Haney Manufacturing Company, restraining it from manufacturing seats with patent bracket and fold, etc. This article was offered in evidence by plaintiff, and ruled out by the

court. Before the offer was finally made the plaintiff claims to have shown, or offered to show, certain other facts which tended to prove the responsibility of the defendants in this publication. From the evidence given and offered on this subject it is claimed that it appeared or was offered to be shown:

"1. That the article on its face was an advertisement for the benefit of the defendants.

" 2. That it could not have been made up from the court records, for its statement as to the injunction was not suggested by the record.

"3. That it contained a statement (that the Grand Rapids Company had sent a representative to Louisville and Cincinnati, and purchased an old patent) which was within the private knowledge of defendants, and must have been furnished by them.

"4. That it was not written by a reporter, in the usual way, nor by any one connected with the paper.

"5. That Mr. Sproat, the newspaper man, found the manuscript of the article on his desk, in a strange hand-writing, having come in through the business office of the publishing company.

" 6. That the last paragraph of this manuscript was of such a nature (most naturally so extreme against the Haney Company) that the manager thought it was not prudent to publish it in that form, and such last paragraph was accordingly cut out.

" 7. That defendants' account-books showed a payment July 29 to the Telegram-Herald of $8.55 for advertising, the entry being 'Adv. Com. Rec.,' which Mr. Peregrine says means, 'Advertising Commercial Record,' but none of the defendants have any idea what this payment was for, unless for advertising for men or for job-printing.

" 8. That during that year the Telegram-Herald did no job-printing nor any work except publishing a newspaper, and that defendants had no advertisement in the Telegram-Herald on July 29, or for 90 days before, unless it was this article.

" 9. That exactly the same false statement as to the injunction contained in the article was repeated by defendants in a letter by Mr. Peregrine personally, and was current in defendants' office among their employés."

The court was of the opinion that these matters, taken together, had no tendency to show that the defendants were responsible for the publication. It appears that the plaintiff called the defendants as witnesses, and they denied all knowledge of the publication, or that they were in any manner responsible for it. We think, however, that the facts shown, and offered to be shown, raised issues which should have gone to the jury; that under the evidence given and offered, which upon this record must be taken as true, the plaintiff was entitled to have the article placed before the jury; and, under proper instructions, it was a question of fact for their consideration whether the publication was with their knowledge, or whether they were responsible for it. These were not the only circumstances shown, or offered to be shown, tending to connect the defendants with the publication or the circulation of the facts stated therein.

Under the fourth count of the declaration plaintiff gave evidence tending to show that one C. B. Elliott had been selling seats for plaintiff in Kansas, Colorado, and Nebraska; that on March 2, 1887, Elliott received a letter purporting to come from defendants, stating, among other things, that defendants had served an injunction against Haney & Co., and about closed up its factory; that in consequence of this letter Elliott ceased to take orders for plaintiff, and turned orders taken over to other parties. Defendants deny writing this letter, or that the correspondence clerk by whom the letter was claimed to have been written had any authority from defendants to write it. Defendants contend that Mr. Reed, the correspondence clerk, was acting outside his authority in writing it, so that the defendants could not be held liable for his acts. This letter was written in the name of the defendants, by one who had charge of the corres-

pondence, and received and answered letters without instructions from his principals.

In connection with this letter and the other circumstances, it was shown, under the fifth count, that two men, DeMoss and Conrad, school officers of their respective districts in Clinton county, in August, 1886, went to Grand Rapids to buy school seats, and, going into defendants' office, they were there told that Haney & Co. were closed up, and could not fill orders, and that if they purchased from Haney & Co. they would do so at their own risk, and the witness DeMoss says that something was then said about an injunction. The witness thought it was defendant Peregrine who made the statement, and in the court-room pointed out the man who he thought made it, but pointed out the defendant Perkins instead of Peregrine. Defendants deny making the statement, and claim that, if any such statement was made, it must have been by Mr. McCormick, an employé, who then had charge of the business.

These are some of the circumstances shown, and offered to be shown, by the plaintiff, tending, as counsel claim, to connect the defendants with the publication of the article in the Telegram-Herald, the writing of the letter to Elliott, and the oral statement made of plaintiff's business, and from which it has sustained damage and loss. The court below was of the opinion that there was nothing to go to the jury connecting the defendants with these representations. We do not agree with the learned circuit judge. Certain facts are testified to, with more or less degree of certainty, by the witnesses DeMoss and Conrad. Whether true or not were questions of fact. If these witnesses were to be believed, the defendants, or some of them, were making statements the natural tendency of which would be to injure the plaintiff in its business, and of like character to those con-

tained in the Telegram-Herald, and in the letter to
Elliott.

From this record certain facts must be conceded to be
established: That an article was published in the Tele-
gram-Herald; that Mr. Sproat, the manager of the news-
paper in which the article was published, found the
manuscript of the article on his desk in a strange hand-
writing, having come through the business office of the
publishing company; that defendants' account-books
showed a payment July 29, to the Telegram-Herald, of
$8.55 for advertising, and the nature of which defend-
ants are unable to explain; that the same statements
contained in the article in the Telegram-Herald are sub-
sequently reiterated in the letter 'to Elliott, the letter
being written by the correspondence clerk of the defend-
ants, who had charge of this department; and that state-
ments of similar character were also made by one of the
defendants, either Perkins or Peregrine, to the witnesses
DeMoss and Conrad, subsequent to the time the Elliott
letter was written. Certain facts being proven, the nat-
ural inferences to be drawn from these facts were for the
jury, and the court was in error in holding that there
was nothing to go to the jury.

The fact that plaintiff called the defendants as wit-
nesses, and they testified that they knew nothing of the
article in the Telegram-Herald and the letter to Elliott,
and that they made no such statements as claimed by
DeMoss and Conrad, would not, of itself, prevent the
plaintiff from proving his case by other witnesses or cir-
cumstances. Neither would the jury be debarred by these
facts from drawing the natural and necessary inferences
from facts proven by other testimony and circumstances,
outweighing the positive statements of the defendants.

Some contention is made that the defendants could not
be made jointly liable for these slanders upon the busi-

ness of the plaintiff, even if one or two of the partners may have been found guilty. The defendants were partners in business, and each of the partners is an agent of the partnership as an entirety, and, if in the course of that business he injures the business of another by slander, the partnership is liable therefor, just as it might be for any other tort by any other agent. *Patten v. Gurney,* 17 Mass. 182; *Lothrop v. Adams,* 133 Id. 481; *Glass Co. v. Paulk,* 83 Ala. 404 (3 South. Rep. 800). In the present case it is claimed that the very purpose of these statements was to aid the business of the defendants as a partnership, by preventing plaintiff from making sales of an article which the defendants were themselves as a partnership selling. If this fact is proven, then, in the course of the partnership business, if any one of the partners made false representations as to the business of another, and for the purpose of aiding the business of his own firm, the partnership must be held responsible for it.

It is also urged by defendants that, this being an action of slander of title, general damages were not recoverable, and that no special damages were proved. Elliott refused to turn his orders over to plaintiff after receiving the letter of March 2, 1887, and De Moss and Conrad purchased seats of defendants which otherwise they might have purchased of plaintiff. This was some proof of special damages. It is not, however, strictly an action for slander of title. If the statements claimed to have been made by defendants were true, that the plaintiff was under injunction from the United States court not to sell seats, then any sale made would have been a violation of the injunction, and a contempt of the court, for which plaintiff could have been proceeded against personally; and the declaration alleges that these statements were made of and concerning the plaintiff, and to

injure the plaintiff in its business. Words spoken or written injurious to a person in his business, and false and malicious, are actionable *per se*, and special damages need not be proved. The declaration alleges both general and special damages, and some testimony was given on the trial tending to prove both.

Under the facts proven and offered to be shown, the court was in error in refusing to admit in evidence the article published in the Telegram-Herald. The letter should also have been received.

For the errors pointed out the judgment of the court below must be reversed, with costs, and a new trial ordered.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. MORSE, J., did not sit.