BANNER *v.* SCHLESSINGER.

1. PARTNERSHIP—FRAUD OF ONE PARTNER—JOINT LIABILITY.
   Members of a copartnership are jointly liable for goods fraud-ulently obtained for the firm by one partner, and by him fraudulently disposed of.

2. SAME—PLEADING—JOINT TORT FEASORS.
   It is not necessary to allege a partnership in order to bind, as joint tort feasors, parties who join in, and knowingly assist in, the fraudulent disposition of goods fraudulently obtained.

3. TRIAL—INSTRUCTIONS TO JURY.
   When the court attempts to state to the jury the substance of a witness' testimony, it should state that which supports the theories of both parties, and not give undue prominence to that favorable to one party only.

4. SALE—FRAUDULENT REPRESENTATIONS—EVIDENCE.
   Evidence of the fact that fraudulent representations, made to the seller's agent on a fraudulent purchase of goods by another, were communicated to the seller, is admissible in an action to recover the value thereof, not for the purpose of corroborating the testimony of such agent that such statements were made, but for the purpose of showing that the seller knew of them, and relied upon them in selling the goods.

Error to Wayne; Donovan, J. Submitted April 22, 1896. Decided May 12, 1896.

Case by Simon Banner and another against Robert Schlessinger and others for the fraudulent conversion of certain merchandise. From a judgment against Robert Schlessinger alone, plaintiffs bring error. Reversed.

*Sloman, Groesbeck & Robinson,* for appellants.

*Russel & Campbell,* for appellees.

GRANT, J. The plaintiffs are merchants in New York City. Defendant Robert Schlessinger, either alone, or with

defendants Max and Philip as partners, carried on the clothing business in Detroit. In August, 1891, he went to New York, and purchased of the plaintiffs a bill of goods amounting to about $800. Shortly after this purchase he failed, and executed mortgages on all his goods, to the amount of about $15,000, to secure his home creditors. The declaration contains three counts,—two special, alleging a fraudulent conspiracy on the part of the defendants to defraud plaintiffs and their other cred- itors, and a third count in trover. The special counts allege, in substance—

"That they [plaintiffs] were induced to sell these goods in pursuance of fraudulent representations made by the defendant Robert Schlessinger on or about July 27, 1891 (which false pretenses are set up therein), and that on or about September 1, 1891, and divers other dates between then and the commencement of suit, the defendants, Robert, Max, and Philip Schlessinger, fraud- ulently conspired to secrete these goods, and goods pur- chased from other firms, and to dispose, incumber, and convert the remainder, with intent to defraud the plaintiffs.

"That, in pursuance of such fraudulent conspiracy, after the receipt of plaintiffs' goods, the defendants, in the month of October, shipped, and caused to be shipped, by express, to Grand Rapids, in the nighttime, and after the usual business hours, a large quantity of goods of the stock in trade of the defendant Robert Schlessinger, including the goods purchased from the plaintiffs, under the false and fictitious name of Schultz, and that, after the receipt of the goods at Grand Rapids, the defendant Max Schlessinger went there, and, by representing him- self as being Schultz, obtained the goods from the ex- press company, and sold them to a merchant at Grand Rapids for the sum of $900, when the goods so shipped were of the value of $2,000, and which facts, it is alleged, were well known to the defendants, and each of them.

"That thereafter, in pursuance of such conspiracy, dur- ing the months of September and October, 1891, they shipped to different points in the State of Michigan other goods, under fictitious names, which had been procured from divers merchants with whom Robert Schlessinger dealt, by means of false representations, and that the pro-

ceeds of this conversion were appropriated by the defendants to their respective use.

"That, in pursuance of the same purpose, on or about November 5, 1891, they caused mortgages, aggregating in amount $14,793.67, to be made upon the remainder of the goods, 'the amount of which mortgages largely exceed the value thereof,' and by reason of the foreclosure of which the same were sold for considerably less than the first two mortgages thereon, whereby the plaintiffs lost their said claim, and became greatly damaged."

Verdict and judgment were rendered against defendant Robert, and in favor of defendants Max and Philip. Plaintiffs appeal.

1. Max and Philip testified and claimed that they were simply employés, and not interested with Robert as partners. Robert testified that they were partners with him, and that they were to share equally profits and losses. The testimony on the part of the plaintiffs disclosed that Max and Philip assisted in putting up and shipping away some of the goods purchased from plaintiffs. If they were in fact partners, and Robert alone made the false representations upon which the goods were purchased for the firm, and they were fraudulently disposed of by him, all are jointly liable. *Haney Manufacturing Co.* v. *Perkins,* 78 Mich. 1. If the defendants Max and Philip were not partners, but joined in and knowingly assisted in the fraudulent disposition of the goods, then all would be jointly liable, even though Max and Philip received no direct benefit. There was evidence to sustain this claim. Max went to Grand Rapids, personated the fictitious Schultz, obtained the goods from the common carrier, and sold them for half their real value. The plaintiffs were entitled to have the case submitted to the jury upon these two theories, and it was not necessary to allege a partnership in order to bind all as joint tort feasors, having partnership relations, upon the first theory. Of course, the mere selling of the goods by Max and Philip, if they were not partners, without any guilty knowledge or participation in the fraudulent act, would not render them liable for conver-

sion. We do not think the case was fairly submitted to the jury upon these theories.

2. When a court attempts to state to a jury the substance of the testimony of a witness, it should state that which supports the theory of the one party, as well as the other. We think the court, through inadvertence, did not fairly state to the jury the testimony of Robert and Max, but gave undue prominence to that which was favorable to the defendants.

3. In view of a new trial, one other point should be considered. One Mendelson, plaintiffs' credit man, had testified to the representations which defendant Robert made to him at the time of the purchase, and that he communicated these representations to the plaintiffs. One of the plaintiffs was asked to state what these representations were, as reported to him by Mendelson. This was excluded, evidently upon the ground that it was hearsay. If it were offered in corroboration of the witness Mendelson, it would be incompetent; but such was not its purpose. The court should have admitted it for the purpose of showing that plaintiffs knew what the false representations were, and that they relied upon them in selling the goods.

The other assignments of error are based largely upon the principles already discussed, and need not be further noticed.

Judgment reversed, and a new trial ordered.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.