BOSTON FOUNDRY COMPANY *vs.* HARRY WHITEMAN.

JULY 14, 1910.

PRESENT:   Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)   *Evidence.*

A party is not injured by the exclusion of testimony as to a conversation, when his testimony to the same effect as to a conversation between the same parties at a different place was admitted.

(2)   *Credit Statement.   Evidence.*

A. was doing business as A. & Co.:—

*Held,* that a statement made to A. & Co., for the purpose of obtaining credit 'made by a partner of defendant, who was sent by him to buy goods on credit, was properly admitted in an action of deceit brought by A. based on false statements contained in such statement.

(3)   *Liability of Partner in Deceit.*

A partner is liable in deceit for false representations made by another partner, although without his knowledge or authority, when made in the course of the partnership business.

TRESPASS ON THE CASE, for deceit.   Heard on exceptions of defendant, and overruled.

JOHNSON, J.   This is an action of trespass on the case for deceit, brought by Colman Levin, of Boston, county of Suffolk, and State of Massachusetts, trading in said Boston as Boston Foundry Company, against Harry Whiteman, of Providence, county of Providence, and State of Rhode Island.   The declaration is in three counts, the first alleging than on, to wit, the 4th day of January, 1909, at, to wit, Boston, defendant stated and represented to plaintiff that he, the defendant, was solvent; that he had merchandise on hand of the value of sixteen hundred dollars, horse, wagons, and carriages of the value of five hundred dollars, eight hundred dollars in cash, leases amounting to three hundred dollars in value; that he owed nothing for borrowed money, nothing for notes given for merchandise, and sixty dollars for merchandise on open account, and that his net worth, after making allowance for bad bills and shrinkage on merchandise, over and above all liabilities, was thirty-

two hundred dollars.   Plaintiff avers that said statements and representations were false, and were known by the plaintiff to be false when made, and were made by him with the intent to thereby procure from plaintiff a large, false, and unwarranted credit, and deceive and defraud the plaintiff; that plaintiff relied on said statements and representations and believed them to be true, and was thereby induced to, and did, sell and deliver to defendant stoves of the value of seventy-nine dollars, etc. The plaintiff also avers that defendant at the time of making said representations was in failing circumstances, that he did not have merchandise on hand, horses, wagons, and carriages, nor cash, as represented, &c., and that defendant's debts and liabilities exceeded his assets, and that he has not been paid, &c.

In the second count the representations are laid as made by Abe Whiteman as the agent of the defendant, and in the third count the representations are laid as made by the defendant to a mercantile agency.

The testimony shows that on January 4th, 1909, the defendant, Harry Whiteman, and his son, Abe Whiteman, were partners.   On that day Abe Whiteman, the defendant's son, went to Boston and bought goods of Colman Levin doing business both as Colman Levin & Company, and as Boston Foundry Company.   The entire amount of the bill was about three hundred dollars.   The testimony shows that Colman Levin sold carpets and floor coverings under the name of Colman Levin & Company, and ranges as Boston Foundry Company, in the same store.   Colman Levin was the sole proprietor of Colman Levin & Company, and the Boston Foundry Company.   His transactions under both names were entered in his private ledger and the profits and losses, whether of Colman Levin & Company or Boston Foundry Company, were the profits and losses of Colman Levin.

The value of the goods sent by the Boston Foundry Company to Harry Whiteman was seventy-nine dollars.   On the same day Abe Whiteman made a statement in writing of defendant's financial condition, which was put in evidence.   This state-

ment was dated January 4, 1909, and contained the following material averments:

"The undersigned desire to obtain credit from Colman Levin & Co., for present and future purchases, and make the following statement of present financial condition, which statement is made for the purpose of showing means and ability to pay.

"Name, H. Whiteman.

Location, 267 Main St., Woonsocket, R. I.

Length of time in business here, 6 weeks.

Ever failed or compromised, and when.   Never.

| | | |
|---|---:|---:|
| Value of merchandise (stock of goods on hand).... | $1,600 | 00 |
| Value of horse, wagons, and carriages............. | 500 | 00 |
| Cash...................................... | 800 | 00 |
| Bank account at Producers National Bank | | |
| Leases amounting to........................... | 300 | 00 |
| Owe for merchandise on open account.. | 60 00 | |

Net worth after making allowances for bad bills and shrinkage in merchandise, above all liabilities.. $3,200 00
Have insurance in force upon merchandise amounting to.................................... $3,000 00

"The above is a true statement of my present financial condition and shows my means and ability to pay, and by signing this statement, certify that I have carefully read all of the foregoing and understand the full import and tenor thereof.   In the event of any material change in my financial affairs I agree to notify you at once, and until such notice, you may rely upon this statement."

This statement was signed:

"HARRY WHITEMAN,

Pr

ABE WHITEMAN."

and was witnessed, under date of January 4, 1909, by Max S. Warren.

The evidence shows that these statements were false; that instead of the defendant having sixteen hundred dollars' worth

of merchandise at the time, he had about seven or eight hundred dollars worth; and instead of "certain horse, wagons, and carriages amounting to five hundred dollars," he had a horse and one wagon which cost him three hundred dollars; and instead of eight hundred dollars in cash, he had no cash.

At the conclusion of the evidence for plaintiff, the defendant offered no evidence, and moved for the direction of a verdict for the defendant. This motion was denied, and the defendant excepted. The plaintiff then moved for the direction of a verdict for the plaintiff. This motion was granted, and the defendant excepted. The jury, under the direction of the court, rendered a verdict for the plaintiff for $79.00.

The case is now before this court on the defendant's bill of exceptions. The exceptions are:

"1. The defendant excepted to a ruling of said justice at the trial of said cause, excluding that part of a conversation between defendant and the witness Yanes which occurred outside of Mr. Crane's office, as appears on page 38 of the transcript of testimony, &c., filed in said court.

"2. The defendant excepted to a ruling of said justice at the trial of said cause, admitting in evidence a statement in writing made by defendant's son (Plaintiff's exhibit A), as appears on pages 50 and 54 of the transcript of testimony, &c., filed in said court.

"3. The defendant excepted to a ruling of said justice at the trial of said cause, excluding conversations between defendant's son and the witness Warren at the time defendant's son signed plaintiff's exhibit A, as appears on page 67 of the transcript of testimony, &c., filed in said court.

"4. The defendant excepted to a ruling of said justice at the trial of said cause, denying defendant's motion that a verdict be directed for defendant, as appears on page 77 of the transcript of testimony, &c., filed in said court.

"5. The defendant excepted to a ruling of said justice at the trial of said cause, granting plaintiff's motion that a verdict be directed for the plaintiff, as appears on page 80 of the transcript of testimony, &c., filed in said court."

(1)    As to the first exception: · The question had been before asked, answered, and objection made by plaintiff's counsel (p. 36). In the colloquy between court and counsel, Mr. Crane said: "Mr. Carroll is mistaken from the questions and answers. The conversation with Mr. Yanes was in this man's house. THE COURT: Mr. Carroll says it was the same place. This conversation must relate to the same time that you had your conversation with Mr. Yanes. MR. CARROLL: My previous question was that he went to Mr. Whiteman's as a preliminary to coming to Mr. Crane's office with Mr. Yanes, and the conversation with Mr. Yanes took place after they got there. I understood your honor to rule that if it was preliminary to that conversation with Mr. Yanes, that I had a right to ask it." The court then sustained the objection to anything that occurred between Mr. Whiteman and Mr. Yanes before they arrived at Mr. Crane's office. To this ruling defendant's counsel excepted. The same question was later asked of the witness and answered in the same way, in testifying to the conversation which took place at Mr. Crane's office. It could not injure the defendant, that his testimony to the same effect as to a conversation between the same parties at his house was ruled out. The defendant takes nothing by this exception.

(2)    The second exception is without merit. The evidence showed that Abe Whiteman was the partner of the defendant; that he did the buying and that the defendant sent him to Boston to buy goods on credit; that he went into plaintiff's store and selected a large bill of goods, larger than the defendant had bought there before; that Max Warren, a salesman of the plaintiff, told him that it would be necessary to have some knowledge of his financial standing, and after his verbal statement as to the financial standing of the defendant, told him that from that he was entitled to credit, but that he, Mr. Warren, wanted something more sure, and Abe Whiteman then offered to sign a statement and did sign the statement offered in evidence. The statement purported to be made to Colman Levin & Company. The evidence showed, however, that Colman Levin was the sole owner of the business, dealing in carpets, &c., under the

name of Colman Levin & Company, and dealing in stoves and ranges, in the same store, under the name of the Boston Foundry Company.   The statement was properly admitted.

The third exception is to the exclusion of the following question and answer:   "158 Q.  Didn't he tell you that his mother had eight hundred dollars which he thought his father might be able to get from her at a pinch?   A.  That is absolutely untrue."  This was objected to by plaintiff's counsel, and the objection was sustained.   Max S. Warren was being cross-examined as to the making of the written statement by Abe Whiteman, and had testified as follows:   "156 Q. There was something said about $800.00, wasn't there?   A.  Something said about $800.00?   157 Q. Yes, sir, cash.   A.  He filled out the statement to his own ideas, just what he claimed to have had, he put it down in the statement."   Then followed the question and answer objected to.   It is difficult to see why the plaintiff objected, and equally difficult to see what advantage the defendant could derive from the question and answer if allowed to stand.   It is true that great latitude is allowed in cross-examination, and we do not think that a ruling allowing the question and answer to stand would have been erroneous. However, as it is clear that the ruling, although against him, could only be of benefit to the defendant, he takes nothing by his exception.

As to the fourth exception: The evidence sufficiently justified the denial of the defendant's motion that a verdict be directed for the defendant.

(3)    As to the fifth exception, viz., to the decision of the court granting the plaintiff's motion that a verdict be directed for the plaintiff:  This raises the question whether the defendant is liable in an action of deceit on the representations made by Abe Whiteman, his partner, he, the defendant, having no knowledge of said representations at the time they were made. It is shown by the evidence that his son Abe conducted the business for him; that he bought goods for him; that he sent him to Boston to get goods; that he told him to get goods on credit. He says he did not authorize Abe to make any representations

in order to buy goods on credit, and that he did not authorize him to make any such statement.

By the great weight of authority, it is well settled that all the members of a firm are liable for fraud committed by one of them in the ordinary conduct of the firm's business, although the others do not participate in the fraud and have no knowledge of it.  22 Am. & Eng. Ency. of L. 166, 167, states the rule as follows:  "It is well established in the law of agency that a principal is civilly liable for the tortious or fraudulent act, whether criminal or not criminal, of his agent, not only when he has previously authorized or subsequently ratified the act, but even though he may have expressly forbidden it, if it has been committed by the agent in the course and as a part of his employment.  Applying these principles of agency, therefore, a firm is liable for any loss or injury caused to any person not a member of the firm, or for any penalty incurred by any wrongful act or omission of a partner, acting in the ordinary course of the business of the firm, or with the authority of his copartners. The extent of the firm's liability is the same as that of the partner so acting or omitting to act.  Thus, all the members of a firm are liable for defamatory statements made to aid the firm business, for a malicious prosecution instituted for the purpose of furthering such business and by its authority, or for fraud committed by one of them in the ordinary conduct of their business, although the others do not participate in the fraud and have no knowledge of it."   The rule is stated in Cyc. as follows: "The firm is liable for the wrongful acts or omissions of a partner, while he is acting in the ordinary course of the firm's business, or with his copartners' authority."   30 Cyc. 523. "For torts committed by a partner, or by any agent for whose misconduct a partnership is liable, the injured party may, at his election, sue all the partners or any one or more of them." 30 Cyc. 566.   "Supposing a tort to be imputable to a firm, an action in respect of it may be brought against all or any of the partners.  If some of them only are sued, they cannot insist upon the other partners being joined as defendants, and this rule applies even where the tort in question is committed by an

agent or servant of the firm and not otherwise by the firm itself." Lindley on Partnership, p. *283. This rule is supported by numerous cases,—see *Murphy* v. *Coppieters*, 136 Cal. 317; *Tenney* v. *Foote*, 95 Ill. 99; *Patterson* v. *Seaton*, 70 Iowa, 689; *Banner* v. *Schlessinger*, 109 Mich. 262; *Durant* v. *Rogers*, 87 Ill. 508; *Morehouse* v. *Northrop*, 33 Conn. 380; *Locke* v. *Stearns*, 1 Metcalf, 560; *Mode* v. *Penland*, 93 N. C. 292; *Clark* v. *Ball*, 34 Colo. 223; *Hobbs and Tucker* v. *Chicago Packing etc., Co.*, 98 Ga. 576; *Brown* v. *Foster*, 137 Mich. 35; *Hall* v. *Younts*, 87 N. C. 285; *Grissom* v. *Hofius*, 39 Wash. 51; *U. S.* v. *Baxter*, 46 Fed. 350; *Dudley* v. *Love*, 60 Mo. App. 420.

The direction of a verdict for the plaintiff on the evidence submitted was proper.

The defendant's exceptions are overruled, and the cause is remitted to the Superior Court with direction to enter judgment for the plaintiff upon the verdict.

*Mendell W. Crane*, for plaintiff.

*Thomas A. Carroll, Walter P. Suesman*, for defendant.