SHAMBLEAU *v.* HOYT.

1. BANKRUPTCY—DISCHARGE—TORT CLAIMS.

Discharge in bankruptcy does not bar liability in tort for alleged fraud.

2. FRAUD—STOCK—EVIDENCE.

Evidence *held*, to establish cause of action for implied promise to repay sums paid for certain stock by plaintiff to defendant brokers upon waiver of tort (3 Comp. Laws 1929, § 14007).

3. PARTNERSHIP—CONTRACT OF GUARANTY—AUTHORITY TO MAKE—EVIDENCE.

Evidence *held*, to establish right to recover on contract of guaranty against loss in the purchase of corporate stock, made in the regular course of business, it having been authorized and ratified by members of partnership of stock brokers.

4. DAMAGES—MEASURE—FRAUD—STOCK.

Measure of damages for fraud in purchase of corporate stock is difference between amount paid for it and amount for which it was sold, with interest added.

5. ASSUMPSIT—ELECTION BETWEEN COUNTS—WAIVER OF TORT.

Refusal to compel election between counts of declaration was not prejudicial error where each was in assumpsit and amount of recovery was the same under each one, though one was under alleged contract of guaranty and other on implied promise under statute permitting assumpsit upon waiver of tort (3 Comp. Laws 1929, § 14007).

6. FRAUD—STOCK POOL—PARI DELICTO—STATUTES.

Recovery by plaintiff is not barred by reason of being in *pari delicto* with defendants as to alleged illegal stock pool which was not illegal in State where made and carried out, not subject to laws prohibiting it in this State and not an illegal operation as plaintiff understood it when representations relative thereto were made (3 Comp. Laws 1929, § 16647).

7. SAME—INDUCEMENT—EVIDENCE—DAMAGES.

Evidence *held*, sufficient to ascertain amount of damages for fraud in inducing purchase of corporate stock.

8. ASSUMPSIT—RECOVERY—WAIVER OF TORT.
    Allowance of recovery under count on contract of guaranty
    against loss renders unnecessary determination of right to
    recover under count based on implied promise raised where
    tort was waived as amount of damages would be the same.

9. APPEAL AND ERROR—FRAUD—CONTINGENT OR SPECULATIVE DAM-
    AGES.
    Denial of recovery of contingent or speculative damages incident
    to sale of stock, for difference between price asked and re-
    ceived, in order to reinvest proceeds in fraudulently recom-
    mended stock, either as direct result of fraud or on contract
    of guaranty, is affirmed.

10. GARNISHMENT—STATUTES—BONDS—LIABILITY.
    Statute providing that bond to release garnishment shall have
    penal sum ''equal to double the amount of claims of the
    plaintiff, as sworn to in the affidavit filed for the writ of
    garnishment'' is not ambiguous and does not restrict re-
    covery on the bond to amount stated in garnishment affidavit
    (3 Comp. Laws 1929, § 14900).

11. SAME—BOND—SURETY'S LIABILITY.
    Bond to release garnishment, filed before declaration, bound
    surety to full extent of penal sum of bond.

12. SAME—BOND—AMENDMENT OF SUMMONS OR DECLARATION—
    AMOUNT OF RECOVERY.
    Recital in summons of extent of plaintiff's claim did not restrict
    surety's liability on bond to release garnishment, it being
    common knowledge that courts frequently permit enlargement
    of amount recoverable by amendment to summons or declara-
    tion.

13. COSTS.
    No costs are awarded on appeal where neither party has fully
    sustained position taken.

Appeal from Wayne; Parker (James S.), J., presiding. Submitted October 19, 1933. (Docket No. 20, Calendar No. 37,265.) Decided December 29, 1933.

Assumpsit by Alletta M. Shambleau against J. M. Hoyt, William Kempton Johnson and others, doing

business as Prince & Whitely, for sums due on implied promise of defendants in connection with stock transactions. Judgment for plaintiff against defendant Johnson and Independence Indemnity Company, a foreign corporation, surety on a bond to release garnishment. All parties appeal. Modified and remanded.

*Edward N. Barnard,* for plaintiff.

*Robert M. Brownson, Kenneth Murray* and *Paul Marco (Eugene L. Garey,* of counsel), for defendants.

NORTH, J. Defendants, being partners and operating under the firm name Prince & Whitely, conducted a brokerage business in the city of Detroit. This was a branch office, the home office being in New York. Plaintiff, acting through her husband, bought and sold stocks through defendants' agency. She brought this suit to recover losses sustained. Her cause of action involves losses incident to: First, purchases and sales of Wilcox-Rich B stock; second, purchases and sales of stock of the Michigan Steel Company; and third, the sale of 300 shares of Radio Corporation of America. On trial before the court without a jury plaintiff recovered on the first and second causes of action above indicated; but as to the third defendants prevailed. Each of the parties has appealed.

As amended, plaintiff's declaration contains four counts. Count one alleges a fraud in that plaintiff was induced to purchase Wilcox-Rich B stock through false representations of defendants and their agents that defendants were then and had been sponsoring this stock on the New York Ex-

change, that defendants were in a pool with others and controlled the price of this stock, and that by reason thereof the stock would go up in price and if plaintiff purchased she would make a profit; that the representations as to sponsoring, the existence of a pool, and the controlling of the price of this stock were false; that plaintiff, relying on these false representations bought this stock and sustained a resultant loss of $52,423.25; that under 3 Comp. Laws 1929, § 14007, the law imposes an implied promise upon defendants to repay plaintiff; that defendants fail and refuse to pay, and plaintiff therefore prays judgment under provisions of the cited statute. This is a count in assumpsit based upon waiver of the alleged fraud. See 3 Comp. Laws 1929, § 14007.

Count two sets forth that plaintiff bought through defendants' agency stock of the Michigan Steel Company and that prior to such purchases and for a consideration defendants agreed with plaintiff that if she would purchase this stock they would "guarantee and indemnify plaintiff against any loss;" that acting under such agreement she purchased Michigan Steel Company stock and incident thereto sustained loss of $35,330, and that under defendants' guaranty against loss she is entitled to recover said amount. This is also a count in assumpsit. Later herein we will consider plaintiff's alleged claim in this count of right to recover incident to the sale of 300 shares of stock held by her in the Radio Corporation of America.

The third count in plaintiff's declaration contains only common counts in assumpsit and does not affect decision herein.

Fourth count: After the partnership defendants, excepting William Kempton Johnson, supplemented

their former plea of general issue by giving notice of discharge in bankruptcy, plaintiff further amended her declaration by adding count four. In this count plaintiff again alleges her purchase of the Michigan Steel Company's stock and her loss incident thereto, and sets forth that she was induced to so purchase this stock by defendants' false representations (which she believed and relied upon) that a pool had been formed consisting of three financially strong firms of stock brokers operating on the New York Exchange—defendant being one of such firms—that this pool would, by its operation, cause the price of Michigan Steel Company's stock to go up rapidly and if plaintiff would purchase she would profit thereby; that the representation as to such pool having been formed was false, and under 3 Comp. Laws 1929, § 14007, an implied promise is imposed upon defendants to pay the amount of her loss, $42,230; that such payment has not been made, wherefore plaintiff prays judgment. This is also a count in assumpsit under the cited statute based upon waiver of an alleged tort.

In entering judgment for plaintiff the circuit judge perpetually stayed execution as to all of the partnership defendants, excepting William Kempton Johnson, because of their discharge in bankruptcy. Aside from Mr. Johnson, the only party having any substantial interest in this appeal is the Independence Indemnity Company. Early in this litigation this company became surety on a $70,000 bond given to release garnishment. While plaintiff's right to recover was adjudged in a total amount of $97,476.38 and costs, as to the surety recovery was limited to the penal amount of the bond. Appellee now admits in her brief that because of a debit balance appearing against her on defendants' books

which with interest totals $28,775.88, the judgment entered in the circuit court should be reduced to $68,700.50.

While not in the usual form of judgments in assumpsit, it quite conclusively appears from the entry itself that the judgment is not one in tort. It recites perpetual stay as to all except one of the partnership defendants, and obviously this was because of their discharge in bankruptcy. Had their liability been in tort incident to the alleged fraud discharge in bankruptcy would not have barred judgment herein. *Forsyth* v. *Vehmeyer,* 177 U. S. 177 (20 Sup. Ct. 623); *Schall* v. *Camors,* 251 U. S. 239 (40 Sup. Ct. 135); *Hulsey* v. *M. C. Kiser Co.,* 21 Ala. App. 123 (105 South. 913). Further, as appellee in her brief asserts, each of the four counts is in assumpsit. Hence the judgment must be in assumpsit, not in tort.

Appellants first assert that plaintiff did not establish by competent proof the charge of fraud contained in count one. Careful review of the record fully satisfies us that plaintiff did establish her cause of action alleged in this count.

Appellants assert that the contract of guaranty alleged in count two is beyond the scope of the authority of the several partners and of their agents to make and therefore not binding upon defendants. Plaintiff's husband, Alfred F. Shambleau, acted as her agent in all of her transactions here involved. He testified he was informed by Mr. Reid, manager of defendants' Detroit office, prior to the purchase of Michigan Steel Company's stock that there was a strong pool being operated in this stock by three large New York houses, including defendant partnership, that they were going to run this stock up 20 to 30 points, and that "we (defendant partner-

ship) guarantee you Michigan Steel against a loss,'' that this was repeated several times. Not only did Mr. Shambleau so testify, but he was corroborated by defendants' manager, Mr. Reid, and by another of its representatives, Mr. Martin. Mr. Reid testified he was authorized by Mr. Johnson, a member of defendant firm, "to positively assure said customers against loss from the purchases of Michigan Steel Corporation stock." We quote briefly other testimony on this phase of the case:

"*Q.* I will ask you if Mr. W. Kempton Johnson and other members of the firm, did not assure you that the pool was in the hands of three strong firms, members of the New York Stock Exchange, of which Prince & Whitely was one?

"*A.* He did.

"*Q.* And they would see to it that the purchasers of stock in Michigan Steel would not suffer loss, did they not so advise you?

"*A.* They did. * * *

"*Q.* And did not Mr. W. Kempton Johnson and other members of the firm tell you to so inform your customers? * * *

"*A.* They told me that was the thing to do."

There is also testimony in support of plaintiff's claim of ratification of the guaranty by members of defendant partnership. After the stock in the Michigan Steel Company appeared to have gone wrong on the market, Reid visited the New York office and laid before the members of the partnership, excepting Johnson and Forman, the troubles of customers of the Detroit office who had invested in this stock on the strength of the firm's guaranty against loss. The partners in apparent adjustment of the matter at least temporarily, agreed that such of these accounts as had already been margined to

the extent of 35 per cent. would be carried by the partnership without further margin. These accounts were so carried for months. If defendant brokerage company saw fit to solicit and consummate sales of this stock under such a guaranty as is here claimed, it must be held that the transaction was germane to the partnership's regular business and it should be bound thereby. The case here presented is not one wherein an agent of the partnership or a single member is claimed to have bound the membership on the theory of implied authority. Instead plaintiff's claim is that Reid had express authority to make the guaranty. Our review of the record satisfies us that plaintiff established her right to recover on this theory and the circuit judge correctly so held.

"Every partner is agent of partnership for purposes of its business (2 Comp. Laws 1929, § 9849), and may bind partnership within scope of its business (2 Comp. Laws 1929, § 9851)." *Pelavin* v. *Fenton, Davis & Boyle* (syllabus), 255 Mich. 680.

"One partner cannot bind his copartner by any contract not within the immediate scope of the partnership, unless with such copartner's knowledge and assent." *Barnard* v. *Lapeer & Port Huron Plank Road Co.* (syllabus), 6 Mich. 274.

"The question what is within the scope of the business is frequently a question of fact." *P. Hoffmaster Sons Co.* v. *Hodges* (syllabus), 154 Mich. 641.

As to liability for torts, see *Haney Manfg. Co.* v. *Perkins*, 78 Mich. 1; *Banner* v. *Schlessinger*, 109 Mich. 262.

Damages. (1) Notwithstanding appellants' contention to the contrary, we think this record contains ample testimony from which to ascertain the amount of plaintiff's loss or damage. The false repre-

sentations knowingly made by defendants, while acting as plaintiff's agents, induced her not only to purchase Wilcox-Rich B stock through defendants' Detroit agency but also through the brokerage firm of Hornblower & Weeks. Her damages should be in such an amount as will constitute pecuniary compensation for the loss sustained. Plaintiff's loss on the Wilcox-Rich B stock (count one) is the difference between the amount paid for this stock and the amount for which it was sold with interest added. But we think the record discloses that the amount of damages as fixed by the circuit judge, $59,194.58, is incorrect. In the opinion rendered by the trial judge it is stated that the foregoing figure is "the amount claimed as damages in the amended bill of particulars, together with interest on such sum at five per cent. per annum from October 20, 1929." Reference to plaintiff's amended bill of particulars discloses omission of the purchase of 300 shares, April 30th, for $13,882.50. This was sold May 3d for $17,485.50. Plaintiff profited in the amount of $3,603. With interest at five per cent. per annum computed from October 20, 1929, to date of trial in the circuit court this amounts to $4,070.89. Deducting this from the award by the circuit judge, the correct amount of damages under count one is $55,123.69.

(2) We are of the opinion that the record sustains the finding of the trial judge fixing plaintiff's damage incident to the purchase of Michigan Steel Company's stock (count two) in the sum of $38,281.80. This result is obtained in the following manner. Plaintiff paid for this stock $57,975. She was subjected by defendants to a so-called interest charge of $2,600, total cost $60,575. On the sale of this stock plaintiff received $25,245. The resulting

damage, therefore, amounted to $35,330 with accrued interest in the amount of $2,951.80, totaling $38,281.80.

(3) As result of her dealings with defendants, there is charged on the latter's books against plaintiff $26,613.53 as her debit balance. Computing interest to the time of trial this item amounts to $28,775.88. Plaintiff admits that defendants are entitled to have this sum deducted from the amount she might otherwise recover in this action. The total amount which plaintiff is entitled to recover under counts one and two, as noted above, is $93,405.49, deducting $28,775.88, leaves the amount of plaintiff's recovery as $64,629.61.

Because of our conclusion above indicated we find it unnecessary to determine plaintiff's right of recovery based upon an alleged fraud incident to her purchase of Michigan Steel Company's stock as set forth in the fourth count of her declaration. In this count the amount of her damages would be the same as in count two.

We affirm the circuit judge's holding that plaintiff was not entitled to recover as damages a loss which in count two she alleges she sustained incident to the sale of 300 shares of stock of the Radio Corporation of America. Plaintiff claims that relying upon the fraudulent representations of defendants as hereinbefore recited she sold 300 shares of Radio stock at $86 per share; that she then had this stock listed with defendants for sale at $109 per share or better; that the market finally increased to $114 per share. Plaintiff seeks to recover as damages the difference between $109 per share at which she was offering the stock for sale and the $86 per share at which it was sold, totaling $6,900. Aside from the fact that it is not shown that the members of the

partnership had knowledge that plaintiff was going to sell or did sell her Radio stock for the purpose of investing the proceeds in Michigan Steel stock, there is no showing that the amount for which she sold it was not the fair market value at the time, and further it is a mere matter of conjecture as to whether plaintiff would have held her Radio stock until she received $109 per share for it or whether she might have changed her mind and sold it for a much lower price. To say the least these damages sought by plaintiff were only remotely and indirectly caused by the fraud which she asserts incident to the purchase of Michigan Steel Company's stock, and the amount she seeks to recover is contingent and speculative. It is obvious that plaintiff's alleged loss in this particular cannot be brought within the terms of the guaranty under which she seeks to recover in count two. The circuit judge correctly denied recovery for this alleged element of damage.

Under the circumstances here involved prejudicial error was not committed by the refusal of the circuit judge, who tried the case without a jury, to compel an election by plaintiff between the second and fourth counts of her declaration. Each of these counts is in assumpsit. Notwithstanding the trial judge seems to have taken a different view, we think the second count which sets forth a guaranty asserts a right of recovery based upon alleged contractual relations. The fourth count is also in assumpsit. Here the right of recovery is asserted under the statute and is incident to the waiver of an alleged tort. As noted above, the amount of recovery is the same under each of these counts. The trial judge was justified in declining to compel an election by plaintiff.

In appellants' brief it is contended that there can be no recovery by plaintiff on the ground of the alleged false representations because such representations were that defendants were operating a stock pool in violation of the law and in sanctioning and relying upon such unlawful conduct plaintiff was in *pari delicto*. The New York statute cited by appellants covers "pretended purchases" and "fictitious sales." It is not applicable to the instant case and need not be considered. The Michigan statute (3 Comp. Laws 1929, § 16647) declares void and against public policy any agreement to pool or unite any interests connected with the sale of any article or commodity that its price may in any manner be affected. But, as appellee points out in her brief, if there was such an agreement, it was made between the partners in the State of New York, and for all that appears in this record it was not in violation of any law of that State; and further, not being an agreement made in this State or to be carried out therein, it was not subject to the Michigan statute. Also in support of her claim that the so-called pool agreement, as she understood it, was not unlawful, plaintiff states in her brief:

"In the first place the operation of the pool, as it was understood by Shambleau, was not an illegal combination to fix prices. The pool, as Shambleau was told, was a group of several stockholders who associated themselves for the purpose of acquiring and owning a controlling interest in the Wilcox-Rich stock; and that by reason of their said controlling interest and ownership, they, because they were such owners, had the right to and could fix the prices of their own commodity. He was not given to understand that the pool members 'bound themselves not to sell, dispose of, or transport any article or any

commodity * * * below a common standard figure or fixed value.' "

Upon this record we are not impressed with defendants' contention and it should not be held to bar recovery if plaintiff has otherwise established her right to judgment.

Appellants challenge plaintiff's right to judgment against the surety on the garnishment bond for the full amount of the judgment against the other defendants, not exceeding the penal sum of the bond, $70,000. The contention is that "in no case may the liability under the bond exceed the amount set forth in the original sworn pleading of the plaintiff plus costs and interest." This suit was commenced by summons November 8, 1929. Garnishment proceedings were simultaneously instituted. The affidavit for garnishment stated defendants were justly indebted to plaintiff in the sum of $35,000. The statute provides for discontinuance of garnishment proceedings in case the principal defendant files a bond with two sureties in a penal sum "equal to double the amount of the claim of the plaintiff, as sworn to in the affidavit filed for the writ of garnishment, and with conditions to pay any judgment obtained against defendant or defendants in such action." 3 Comp. Laws 1929, § 14900. The statute is free from ambiguity. Liability on the bond is not limited by the amount stated in the garnishment affidavit. If it were so limited no purpose would be accomplished by the statutory provision fixing the penal sum at twice the amount stated in the affidavit. In this case the declaration was not filed until after the bond. Hence the surety's statutory liability is in no way affected by the subsequently filed declaration wherein the *ad damnum* clause was $50,000.

By an amended declaration the amount named in this clause was increased to $150,000. But this circumstance is quite beside the question. From the outset, when no declaration was on file, defendants and their surety bound themselves to the extent of the penal sum of the bond. Nor do we think the extent of the surety's liability on this statutory bond was minimized by the recital in the summons served upon defendants that plaintiff's claim for damages did not exceed $50,000. It was a matter of common knowledge, binding upon the surety, that courts frequently by amendment permit an enlargement of the amount specified in the summons or in the *ad damnum* clause of the declaration. The circuit judge properly so held. *Daines* v. *Tarabusi,* 250 Mich. 217; *McNeilly* v. *Driscoll,* 208 Mass. 293 (94 N. E. 273); *New Haven Bank* v. *Miles,* 5 Conn. 587.

Both parties having appealed herein and neither having fully sustained the position taken on appeal, no costs will be awarded. The cause is remanded to the circuit court with directions to vacate the judgment heretofore entered in this cause, and to enter judgment in assumpsit in accordance herewith for plaintiff in the sum of $64,629.61 with interest thereon at five per cent. per annum from the date of the judgment heretofore entered in the circuit court; this judgment to run also against the surety on the stay bond filed incident to this appeal.

McDONALD, C. J., and WEADOCK, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.