**MANLEY BENNETT, McDONALD & CO., a Michigan limited co-partnership, Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, a foreign corporation, Defendant.**

No. 91–CV–75557.

United States District Court, E.D. Michigan, S.D.

June 22, 1992.

---

Robert S. Krause, Brian K. Cullin, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for plaintiff.

Merle R. Jenkins, Jenkins Nystrom & Hitchcock, Troy, Mich., for defendant.

### OPINION AND ORDER

FEIKENS, District Judge.

Before me are St. Paul Fire & Marine Insurance Company's (St. Paul) motion for summary judgment and motion to add third-party defendants, and Manley Bennett, McDonald & Co.'s (MBM) motion for summary judgment. The issues are: (1) whether St. Paul is obligated to indemnify MBM (a stock-brokerage firm) for the legal fees and expenses it incurred in defending itself against two lawsuits under the terms of two surety bonds requiring indemnification for such costs due to the dishonest or fraudulent acts of MBM partners or employees (these "defense costs" exceed $460,000); (2) whether St. Paul is required to indemnify MBM for the amount paid by MBM in settlement of those underlying lawsuits pursuant to the same bonds (the settlement amount was $60,000); and (3) whether St. Paul should be allowed to add six former MBM partners or employees as third-party defendants. After careful consideration of all papers filed and of the arguments that were raised at the June 11, 1992 hearing, I DENY St. Paul's motion for summary judgment, DENY St. Paul's motion to add third-party defendants, and

GRANT MBM's motion for summary judgment.

## BACKGROUND

St. Paul issued a Stockholders Partnership Bond and a Stockholders Blanket Bond in favor of MBM in 1975. The relevant provisions provide that St. Paul agrees to indemnify MBM from any loss suffered through any dishonest or fraudulent act or acts committed by any of the general partners of MBM or any of its employees. Both bonds also provide that:

> The Underwriter will indemnify the Insured against court costs and reasonable attorneys' fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond.

The first class action lawsuit brought against MBM was filed in January, 1976, and is known as the "Tirone" action. The Tirone plaintiffs sought damages from MBM for misstatements and/or omissions of material fact in connection with the solicitation of purchases of cattle investment contracts from Calderone–Curran Ranches. Specifically, the plaintiffs alleged that the registration statement and the prospectus and its supplement contained numerous untrue statements of material fact and omitted other material facts.

The second class action brought against MBM was filed in July, 1976, and is known as the "Roth" action. The Roth plaintiffs likewise complained of material misstatements and omissions in connection with prospectuses distributed by MBM in its capacity as dealer-manager of the Calderone–Curran Ranches.

MBM notified St. Paul of the lawsuits and requested reimbursement for costs and attorney fees, as well as indemnity for any judgment. St. Paul refused on both counts, maintaining they had no liability under either bond. MBM then brought a declaratory judgment action in this court in 1982. Then–United States District Judge Ralph B. Guy, Jr., of the Eastern District of Michigan, held that St. Paul had a duty to defend MBM in the two suits. On St. Paul's motion for rehearing, Judge Guy partially vacated his previous order and required St. Paul to indemnify MBM for its court costs and attorney fees, rather than require St. Paul to conduct MBM's defense.

On appeal, the United States Court of Appeals for the Sixth Circuit found that the case was not suitable for declaratory judgment. The court concluded that a superior alternative would be for MBM to bring an indemnity action at the conclusion of the Roth/Tirone trial. Since those cases have now been settled, MBM has done just that.

## ANALYSIS

1. *Duty to Indemnify MBM For Its Defense Costs*

■ An insurer must defend an action even *arguably* covered by its policy. *Dochod v. Central Mutual Ins. Co.*, 81 Mich. App. 63, 264 N.W.2d 122 (1978); *Shepard Marine Construction Co. v. Maryland Casualty Co.*, 73 Mich.App. 62, 250 N.W.2d 541 (1976); *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 102 Mich.App. 136, 301 N.W.2d 832 (1980); *Capitol Reproduction, Inc. v. Hartford Ins. Co.*, 800 F.2d 617 (6th Cir.1986). This means that the duty to defend is not dependent upon the duty to indemnify for loss. *St. Paul Mercury Ins. Co. v. Huitt*, 336 F.2d 37 (6th Cir.1964); *Fireman's Fund Ins. Cos. v. Ex–Cell–O Corp.*, 750 F.Supp. 1340, 1356 (E.D.Mich. 1990).

■ Of course, in this case surety bonds are at issue, not general liability insurance policies, and St. Paul took great pains to point that out. However, the Sixth Circuit has said that, ordinarily, surety bonds are to be construed in a similar fashion to insurance contracts, and I see no reason to depart from that principle in this case. *William C. Roney & Co. v. Federal Ins. Co.*, 674 F.2d 587, 590 (6th Cir.1982). St. Paul makes a variation on this argument that the duty to indemnify for defense

costs and the option to defend if they so choose, as provided for under the bonds, are not synonymous with the duty to defend as found in the above-cited cases. I reject this view and hold that the duty to defend is the same as the duty to indemnify for defense costs.

Finally, the language of the bonds themselves indicates that the duty to indemnify for defense costs is triggered when the claim against the insured is one which is only potentially covered: "The Underwriter *will indemnify* the Insured against court costs and reasonable attorneys' fees ... on account of any loss, claim or damage which, *if established* against the Insured, *would constitute* a valid and collectible loss ... under the terms of this bond" (emphasis added). The clear implication of the clause is that indemnification for defense costs will be provided even in situations of *potential* coverage.

Put another way, both Judge Guy and I are convinced that St. Paul's duty to indemnify MBM for its defense costs arose when the underlying Roth/Tirone complaints were filed. Although the Sixth Circuit ruled that Judge Guy's declaratory judgment was in the nature of an advisory opinion, and therefore remanded with instructions to dismiss the complaint, that duty never disappeared. And although the $60,000 paid in settlement of the underlying claims supports the conclusion that there was indeed a covered loss under the bonds, that is not the crucial point. The crucial point is that there was, at all times, a *potentially* covered loss under the bonds, and that alone is sufficient to trigger the duty to indemnify for defense costs.

ACCORDINGLY, St. Paul's motion for summary judgment on the indemnification for defense costs issue is DENIED. MBM's motion for summary judgment on this issue is GRANTED.

2. *Duty To Indemnify MBM For The Amount Paid In Settlement Of The Underlying Claims*

A. Whose fraud is covered?

■ St. Paul's position, essentially, is that the bonds at issue indemnify MBM against losses sustained through the fraudulent or dishonest acts of MBM partners or employees *committed against MBM*, not against losses sustained through *MBM's own fraudulent or dishonest acts.* St. Paul argues the gravamen of both the Tirone and Roth complaints is the alleged wrongdoing of MBM *itself,* not of any MBM partners or employees for which MBM may have been liable.

This analysis is problematic for two reasons. First, as Judge Guy noted when this case was before him, under partnership liability law, the acts of partners, when they are acting within the scope of their authority, are always imputed to the partnership. *Banner v. Schlessinger,* 109 Mich. 262, 67 N.W. 116 (1896). Consequently, were I to interpret the bonds as St. Paul suggests, there would be little or no coverage whatsoever. Whenever MBM was potentially liable to a third party for the fraudulent acts of one of its partners, St. Paul could argue MBM itself was the wrongdoer and therefore not entitled to indemnity for either the loss or its defense costs.

Second, St. Paul's argument must fail because the Roth/Tirone complaints are not the touchstone upon which St. Paul's duty to indemnify turns. St. Paul must look behind the allegations of the Roth/Tirone complaints and analyze themselves whether coverage is afforded under their bonds, not simply rely upon the fortuitous circumstance that the Roth/Tirone plaintiffs sued MBM rather than a MBM partner or employee. *Detroit Edison, supra; Commercial Union Ins. Co. v. Basic American Medical, Inc.,* 703 F.Supp. 629, 632 (E.D.Mich.1989). In this regard, it is important to note that in the second amended Roth complaint, the plaintiffs specifically allege:

That Manley, Bennett, as distributor of the Ranch's securities, used the prospectuses containing the false statements and omissions ... and was aware of said false statements by virtue of Milton A. Manley, Jr.'s position as both a partner of Manley Bennett and a director of the Ranch.

A fair interpretation of this allegation is that plaintiffs are arguing MBM is liable for the fraudulent or dishonest actions of one of its partners, and that his actions and knowledge are imputable to the partnership.

### B. The Bonds Must Be Construed in Favor of Coverage

 Moreover, although St. Paul maintains that coverage is afforded only for the fraudulent or dishonest acts of MBM partners or employees committed against MBM, the bonds themselves are not so clear. Where an ambiguity exists in the terms used in an insurance contract, Michigan courts favor a construction which holds the insurer liable under its policy. *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734 (1989); *Raska v. Farm Bureau Mutual Ins. Co.*, 412 Mich. 355, 314 N.W.2d 440 (1982). As previously stated, surety bonds should be construed similarly.

ACCORDINGLY, MBM's motion for summary judgment for indemnity on the amount paid in settlement of the Roth/Tirone actions is GRANTED.[1]

### 3. *St. Paul's Motion To Add Third–Party Defendants*

St. Paul seeks to add as third-party defendants the MBM partners and employees whose fraudulent and dishonest acts rendered St. Paul liable under the surety bonds. I find that granting the motion would unduly delay and complicate this litigation. St. Paul's proposed third-party complaint raises legal and factual issues that have nothing to do with this simple indemnification action. Moreover, St. Paul has known the identity of these individuals for nearly 12 years, and under F.R.C.P. 14(a), St. Paul could have added them as third-party defendants without leave of the court if they had acted within 10 days after serving MBM with their original answer. St. Paul did not do so, and I can see no reason, nor does St. Paul offer one, to excuse such tardiness. ACCORDINGLY, St. Paul's motion to add third-party defendants is DENIED.

IT IS SO ORDERED.

---

[1]. St. Paul also argues that pursuant to several exclusions relating to violations of securities laws, trading losses and third-party losses, coverage is denied under the bonds. St. Paul's arguments are without merit and were adequately answered by Judge Guy when brought up nearly ten years ago.