## FRASER v. COLLIER CONSTRUCTION CO.

1. GARNISHMENT—SERVICE OF PROCESS—JURISDICTION—NONRESI-
   DENT PARTIES.

   Service of process by nonresident plaintiff upon secretary of
   State with copies sent by registered mail to principal defend-
   ant, a foreign corporation, with personal service upon
   its duly appointed resident agent and simultaneous service of
   writ of garnishment at principal place of business of garnishee
   defendant corporation, also a foreign corporation admitted to
   do business in this State, gave court in county in which gar-
   nishee defendant's office was located jurisdiction in both the
   principal suit and the garnishee proceedings (3 Comp. Laws
   1929, § 14885).

2. SAME—JURISDICTION—GENERAL APPEARANCE.

   Claim that jurisdiction of court in principal suit was disturbed
   by addition of a party as plaintiff after issuance of writ of
   garnishment lost all merit upon entry of general appearance
   by principal defendant in principal suit (3 Comp. Laws 1929,
   § 14885).

3. APPEARANCE—WAIVER OF DEFECTS IN PROCESS.

   After entry of general appearance and filing of general answer
   to declaration subsequent to a final and adverse decision on
   motion to quash service of summons, notice, affidavit and writ
   of garnishment and to dismiss both the principal and the
   garnishment suit, a defendant may not object to the man-
   ner in which he was brought into court (Court Rule No. 18
   [1933]).

4. SAME—EFFECT OF GENERAL APPEARANCE.

   The filing of a general appearance or the doing of an act equiva-
   lent thereto after final determination has been had that service

* Continued from Vol. 304.

As to notice and opportunity to be heard, see Restatement, Judg-
ments, § 6; requirements for exercise of court's power, see § 8;
designation of agent to accept service of process, see § 18, com-
ment d; method of service of process upon corporation, see § 30,
comment e; consent to jurisdiction of court after action brought, see
§ 18, comment b; entry of general appearance or acts equivalent
thereto, see § 19, and comments a and b.

of process had given the court jurisdiction converts what may have been an action *in rem* into an action *in personam*.

5. GARNISHMENT—APPEARANCE—JURISDICTION.

A general appearance by the principal defendant in the main case does not cure defects in the auxiliary garnishment proceeding, nor does a general appearance by the garnishee in the garnishment case there confer jurisdiction over a principal defendant in the main case.

6. PARTIES—ADDITION—DISCRETION OF COURT—GARNISHMENT.

Addition of an individual as a party plaintiff during the course of the trial in the principal case was within authority of trial court under the statute relative to garnishment of nonresidents, the statute pertaining to addition or dropping of parties and the general statute of amendments where the declaration and bill of particulars were broad enough to bring before the court the issues tried out and submitted to jury and such addition does not appear to have changed the cause of action or added a new one (3 Comp. Laws 1929, §§ 14021, 14144, 14885).

7. PLEADING—PARTIES—MISNOMER—AMENDMENT.

While due diligence is required in pleadings of plaintiff in description of parties, yet, where no one has been misled in any manner by misnomer, amendment should be permitted (3 Comp. Laws 1929, § 14144).

8. SAME—AMENDMENT IN FURTHERANCE OF JUSTICE.

Under statute of amendments, court has power to amend any process, pleading, or proceeding in action or proceeding, either in form or substance, for furtherance of justice, and may disregard any error or defect therein which does not affect substantial rights of parties (3 Comp. Laws 1929, § 14144).

9. GARNISHMENT—CHANGE OF PARTIES.

A garnishee is not discharged nor entitled to judgment of discontinuance by a change of parties to the record where judgment is rendered in favor of plaintiff in the principal suit, if the claim was one that was garnishable at the time of service of process.

10. SAME—STATUTES.

The proceeding in garnishment is a harsh remedy and the provisions of the statute must be followed.

11. APPEAL AND ERROR—QUESTIONS REVIEWABLE—GARNISHMENT—JURISDICTION.

On appeal from verdict and judgment for plaintiff in principal case in which process had been finally determined as having

given court jurisdiction over foreign corporation, as principal defendant, and it had thereafter entered a general appearance, the jurisdiction over it was *in personam* and the question as to the right to judgment against the garnishee defendant and jurisdiction to render same is an issue to be determined in the garnishee proceeding (3 Comp. Laws 1929, § 14858 *et seq.*, as amended).

12. EVIDENCE—BURDEN OF PROOF—AFFIRMATIVE DEFENSES.

The burden of proving a copartnership existed between plaintiff brothers or that they were doing business under an assumed name, requiring the filing of a certificate in order to maintain a suit, was on defendant corporation which had pleaded such defenses (2 Comp. Laws 1929, § 9825, as amended by Act No. 274, Pub. Acts 1931; § 9929).

13. PARTIES — CONTRACTS — PARTNERSHIP — ASSUMED NAME — EVIDENCE.

In action against corporation which interposed defenses that plaintiff brothers were doing business as partners or under an assumed name without having filed a certificate entitling them to do so, evidence showing they were not associated together in any other enterprise prior or since, that business was conducted solely in the name of brother who had commenced the action in his own name so far as the contract and representations to defendant were concerned, that accounts were kept, social security tax returns, progress reports, and payments made by checks drawn in his name only although also showing they were to share "on a 50-50 basis," and that a joint bank account had been opened in their individual names failed to show any fair inference from which jury might find plaintiffs to be partners or doing business under an assumed name (2 Comp. Laws 1929, § 9825, as amended by Act No. 274, Pub. Acts 1931; § 9929).

14. ASSUMPSIT—COMMON COUNTS—ACTION ON CONTRACT.

Where a special contract has been fully executed by one party and nothing remains to be done but pay money, recovery may be had on the common counts.

15. CONTRACTS — EXTRAS — SUBSEQUENT AGREEMENT — EVIDENCE —VALUE.

In action against contractor who had project of erecting steel towers for electric power transmission lines by parties who had performed work of digging, backfilling and tamping holes, where it appears the parties had originally agreed upon a certain sum for each hole of a given size, that power company

required larger holes, that plaintiffs claim parties entered into a subsequent agreement respecting overage of excavation and reasonable value of work performed irrespective of original contract and that defendant claims that, if anything, there was a subsequent express agreement only to pay for overage of excavation at rate set by original contract, since there was a dispute as to what the second contract was, if there was one, it was proper not to require plaintiff to elect as to whether recovery was sought on the basis of an express or implied contract; hence evidence of cost of work as evidence of reasonable value thereof was properly admitted, especially where defendant was allowed full latitude in matter of proof of reasonable value of such work.

16. PLEADING—DECLARATION—ELECTION—CONTRACTS.

Denial of defendant's motion that plaintiffs be required to elect as to whether they relied upon an express or an implied contract in action to recover for services performed was not error where declaration contained the common counts and plaintiff in claiming an express contract for payment for services rendered also claimed that if evidence failed to show an express contract to that effect, facts were shown from which such an agreement must be implied and issues of fact as to the contract and its purport were fairly submitted to jury.

17. APPEAL AND ERROR—VERDICTS—EVIDENCE—CREDIBILITY OF WITNESSES.

Verdict for plaintiff in action to recover for services rendered *held*, within range of conflicting testimony, not excessive under proofs adduced and not contrary to the great weight of the evidence, the credibility of witnesses being for the jury.

WIEST and BUSHNELL, JJ., dissenting.

Appeal from Jackson; Williams (Benjamin), J. Submitted January 15, 1943. (Docket No. 110, Calendar No. 42,153.) Decided April 6, 1943. Rehearing denied June 7, 1943.

Assumpsit by James W. Fraser, Jr., and William J. Fraser against Collier Construction Company, an Ohio corporation, on a construction contract. Ancillary garnishment proceedings against Consumers Power Company, a Maine corporation.

Verdict and judgment for plaintiffs.  Defendant Collier Construction Company appeals.  Affirmed.

*Dahlem & Dahlem* and *Bart T. McIntyre,* for plaintiffs.

*Kleinstiver & Anderson* (*Sanders & Sanders* and *Edmund C. Shields,* of counsel), for defendant Collier Construction Company.

Boyles, C. J.  This case was before us in *Fraser v. Collier Construction Co.,* 297 Mich. 641, where we upheld the jurisdiction of the court and the sufficiency of the service of process.  The cause was remanded for further proceedings in the court below, and trial before jury was had, resulting in a substantial verdict and judgment for plaintiffs.  Defendant on this appeal assigns 129 grounds for reversal, which have been consolidated in appellant's statement of questions involved and may be grouped as follows:

(1) Error in granting plaintiff's motion to add William J. Fraser as a party plaintiff, the case having been started by James W. Fraser, Jr., as plaintiff in garnishment proceedings;

(2) Error in denying defendant's motion to dismiss on the ground that plaintiffs were either co-partners or doing business under an assumed name, without filing a certificate required by statute;

(3) Error in denying defendant's motion to require plaintiffs to elect whether they relied on express or implied contract;

(4) Error in charging the jury as to the respective claims of the parties;

(5) Error in receiving or excluding testimony;

(6) That the verdict was against the great weight of the evidence.

The suit was brought to recover a sum of money claimed to be due plaintiffs on a construction subcontract to dig, backfill and tamp holes for the erection of steel towers for an electric power transmission line. The defendant had a contract to erect this electric transmission line for the Consumers Power Company between Cement City and Adrian in this State, and sublet a portion of the contract to the plaintiffs to dig, backfill and tamp four holes for each of the steel towers.

Plaintiff James W. Fraser, Jr., a resident of Cleveland, Ohio, on May 27, 1940, started suit by summons in the circuit court for the county of Jackson against the defendant, Collier Construction Company, an Ohio corporation, and simultaneously filed with the clerk of the court an affidavit for writ of garnishment against the Consumers Power Company, a Maine corporation having its principal place of business and office in the city of Jackson in said county. Both Collier Construction Company and Consumers Power Company were authorized to do business in this State and had either an officer or a resident agent in this State to accept service of process. The writ of garnishment was served on the Consumers Power Company on the day of issuance. On June 7, 1940, the plaintiff filed in said court a declaration on the common counts. On June 14, 1940, proof of service was filed in the form of affidavits stating that the summons in the principal suit, together with a true copy of the affidavit and writ of garnishment and a notice to appear, was personally served on the acting deputy secretary of State in the absence of the secretary of State, and true copies thereof sent by registered mail, postage prepaid, to Collier Construction Company on June 10, 1940; proof of service by affidavit filed June 14th also showed that the summons in the original suit,

together with the notice to appear, and true copies of the affidavit and writ of garnishment, were personally served June 12, 1940, on the duly appointed resident agent of Collier Construction Company in this State.  On June 5th, June 10th and July 30th, the Collier Construction Company appeared specially and filed several motions to quash the service of summons, notice, affidavit and writ of garnishment, and to dismiss both the principal suit and the garnishment suit.  These motions were heard by the circuit judge and granted, and on November 1, 1940, an order was entered quashing all of the personal and substituted services on the principal defendant, also quashing the writ of garnishment and the garnishee proceedings; and both the principal suit and the garnishment suit were dismissed.  From this order, plaintiff appealed and in the briefs filed in this court on that appeal, the question for decision was stated as follows:

(*By plaintiff*) "1.  Did the lower court have jurisdiction of this action commenced by a nonresident plaintiff in garnishment under 3 Comp. Laws 1929, § 14885 (Stat. Ann. § 27.1883)?"

(*By defendant*) "2.  Did the circuit court for Jackson county have jurisdiction in a suit by a nonresident plaintiff, against defendant, an Ohio corporation licensed in Michigan and having its principal office in Lenawee county, where the cause of action did not accrue in Jackson county, and personal service was not made upon the defendant in Jackson county?"

"3.  Does 3 Comp. Laws 1929, § 14885, apply to an Ohio corporation duly licensed to do business in Michigan and having a principal office and resident agent in Michigan?"

"4.  Did the affidavit in garnishment give the court jurisdiction and authorize substituted service under 3 Comp. Laws 1929, § 14885?"

On that appeal, the order of the lower court dismissing the cause was reversed and the case remanded. Mr. Justice CHANDLER writing for this court held that the service was sufficient, and that the court had jurisdiction in both the principal suit and the garnishee proceedings. *Fraser* v. *Collier Construction Co., supra.*

Defendant now contends that in any event jurisdiction over it as the principal defendant backs up to the garnishment proceeding, and that if the affidavit in garnishment failed to state that William J. Fraser also had an interest in the subject matter, the court had no jurisdiction over the garnishee suit, *ergo,* no jurisdiction over the principal suit. The question now comes before us in the following manner: The suit was originally started by James W. Fraser, Jr., in his own name individually, and the affidavit for the writ of garnishment was made by James W. Fraser, Jr., stating that Collier Construction Company was indebted to him. During the progress of the trial in the principal suit, the defendant moved to dismiss on the ground that James W. Fraser, Jr., the original plaintiff, was not the only party in interest, that the contract was joint between him and his brother, William J. Fraser. Plaintiff moved to add William J. Fraser as a party plaintiff, which motion was granted. Defendant insists that under the circumstances of this suit this was error.

Conceding that the failure to include William J. Fraser in the affidavit of garnishment might have some application in connection with defendant's present claim that William J. Fraser cannot be added as a party plaintiff without disturbing the jurisdiction of the court in the principal suit, the claim lost all merit when defendant subsequently entered a general appearance in the principal suit. On

June 5, 1941, after the remittitur to the circuit court was filed, the defendant, Collier Construction Company, entered a general appearance in the circuit court, with request for copy of the declaration filed in the cause, and on August 23, 1941, filed a general answer to plaintiff's declaration. We are now referring to the principal suit.

"After pleading and going to trial in an action begun by capias, defendant cannot insist on objections to the sufficiency of the affidavit for the writ." *Taylor* v. *Adams* (syllabus), 58 Mich. 187.

"By pleading and going to trial on the merits, after an adverse decision of a motion to quash a writ of attachment for defective service, defendant waives such defects, and cannot thereafter object to the manner in which he was brought into court." *Austin* v. *Burroughs* (syllabus), 62 Mich. 181.

"By filing a declaration, as commencement of suit, the plaintiff submits himself to the jurisdiction of the court, as does the defendant by appearing and pleading, without the required statutory service of the declaration.

"So *held,* where nonresident plaintiffs filed a declaration against nonresident defendants, as commencement of suit upon a contract for building a railroad in this State, and the defendants, through attorneys of this State, voluntarily appeared, and pleaded to the declaration." *Cofrode* v. *Wayne Circuit Judge* (syllabus), 79 Mich. 332 (7 L. R. A. 511).

"It is now contended by counsel for plaintiff that by thus pleading to the merits, and going to trial thereunder, the defendant waived the question of due personal service of the writ by which the cause was commenced. That question is expressly ruled by *Manhard* v. *Schott,* 37 Mich. 234, and the cases there cited, in which it was held that pleading to the

merits brings one into court, whether lawfully served with process or not, and that he cannot afterwards object to the manner in which he was brought in." *Improved-Match Co. v. Michigan Mutual Fire Ins. Co.,* 122 Mich. 256, 259.

*Butcher* v. *Cappon & Bertsch Co.,* 148 Mich. 552 (12 Ann. Cas. 169), was an attachment case, started by filing an affidavit which failed to state that the defendant was indebted to the plaintiff, but stated that the defendant was indebted to "deponent," and there were two plaintiffs. This court held that the affidavit was jurisdictionally defective, and not subject to amendment, citing cases. It was conceded that no general appearance had been entered by the defendant. However, the defendant had filed the statutory bond to pay the judgment,* dissolving the attachment. This court held:

"A circuit court writ of attachment 'is a summons with a clause authorizing a seizure of property.' *Thompson* v. *Thomas,* 11 Mich. 274. The dissolution of the attachment by giving the statutory bond, to pay any judgment which may be recovered in the suit commenced by said writ of attachment, operated as an appearance and converted the suit from an action *in rem* into an action *in personam.*"

The instant case is distinguished from *Flynn* v. *Kramer,* 271 Mich. 500, where we held that the filing of a general appearance after denial of a motion to quash service of process does not waive objections to the jurisdiction, under Court Rule No. 18 (1933). In that case we held that the motion was still open for consideration by this court. In the case at bar the defendant filed a general appearance and answer after the motion to quash service and dismiss suit had been finally determined and denied

---

* See 3 Comp. Laws 1929, § 14777 (Stat. Ann. § 27.1775).—Reporter.

by this court on appeal, and the cause remitted for further proceedings in the court below.

On the appeal now before us, defendant contends that the proceeding against it in the principal suit must be considered solely as *in rem,* against the sum of money conceded to be owing to it by the garnishee defendant; that because the affidavit filed in the garnishment proceeding stated that the defendant herein, Collier Construction Company, was indebted to *James W. Fraser, Jr.,* without also naming William J. Fraser, the court was in error in granting plaintiff's motion to add William J. Fraser as a party plaintiff during the progress of the trial. However, it appears from the foregoing that the circuit court has jurisdiction of the principal suit, both by service of process and the general appearance.

Defendant now argues on this appeal that the court's jurisdiction in the principal suit is solely *in rem,* and not *in personam;* that it still depends on the sufficiency of the ancillary garnishment proceedings. While that contention seems to have been answered adversely to defendant in *Fraser* v. *Collier Construction Co., supra,* all doubt has been resolved against defendant's claim in that regard by its filing of a general appearance and answer in the principal suit.

"A general appearance by the principal defendant in the main case does not cure defects in the auxiliary garnishment proceeding, nor does a general appearance by the garnishee in the garnishment case there confer jurisdiction over a principal defendant in the main case." *Weber* v. *Wayne Circuit Judge,* 217 Mich. 561.

Defendant contends that the court erred in allowing the amendment adding William J. Fraser as a

party plaintiff during the course of the trial in the principal case. The record does not sustain defendant's claim that by so doing a new cause of action was added. The declaration and bill of particulars were broad enough to bring before the court the issues that were tried out and submitted to the jury. Merely adding William J. Fraser as a party plaintiff did not change the cause of action. *Folkerts* v. *Marysville Land Co.*, 240 Mich. 129. The garnishee statute, 3 Comp. Laws 1929, § 14885 (Stat. Ann. § 27.1883), providing for service on a nonresident defendant, states that after proof of service has been filed, "further proceedings to judgment may be had as in ordinary personal actions." Both by virtue of this provision as well as under the general statute of amendments, the court had authority to allow the adding of William J. Fraser as a party plaintiff to the suit.

"No action at law or in equity shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and parties misjoined may be dropped, by order of the court, at any stage of the cause, as the ends of justice may require." 3 Comp. Laws 1929, § 14021 (Stat. Ann. § 27.665).

In *Fildew* v. *Stockard*, 256 Mich. 494, plaintiff brought suit by summons against "Joel Stockard & Company, a Michigan corporation," with ancillary writs of garnishment on several garnishee defendants. Later, plaintiff, on filing his declaration, moved to amend the praecipe, summons and affidavits and writs of garnishment to change the name designation of the principal defendant. Justice BUTZEL writing for the court said:

"In the instant case, no one has been misled. The principal defendant, described as a Michigan corporation, duly appeared, as did its receiver. The gar-

nishee defendants were duly served, and in their disclosures show that there has been no misapprehension on their part as to who Joel Stockard & Company is, even though described as a Michigan corporation. While due diligence is required in pleadings of the plaintiff in the description of the parties, and pleadings still serve a necessary purpose, nevertheless, where no one has been misled in any manner by a misnomer, the amendment should be permitted. Under the statute of amendments, 3 Comp. Laws 1929, § 14144 (Stat. Ann. § 27.838), the court has the power to amend any process, pleading, or proceeding in an action or proceeding, either in form or in substance, for the furtherance of justice, and may disregard any error or defect in the proceedings which does not affect the substantial rights of the parties. Under the facts of the present case, we believe that the circuit judge was correct in permitting the amendment.''

In *Bethel* v. *Judge of Superior Court,* 57 Mich. 379, considering a situation where one of two defendants in the principal suit, with ancillary garnishee proceedings, was dismissed on trial of the principal suit, this court denied an order dismissing the garnishment suit based on that ground. In so doing, the court said:

''Contingencies may arise during the prosecution of any suit by which a change of parties upon the record may become necessary, and the parties in whose favor judgment may be rendered will not be the same as those mentioned in the writ or declaration by which the suit was commenced. If suit is instituted by or against members of a firm, and one should die before judgment, it would proceed in the name of the surviving partners. So, if suit should be commenced by or against joint contractors, and one should die pending the same and before judgment, it could be revived and proceeded

with in the name of the survivor. In these cases the judgments recovered would be in the same suits, and if garnishee proceedings had been instituted at the time the original suits were commenced, the change of parties to the record would not have discharged the garnishees, nor operated to discontinue the proceedings against them. To give the statute (How. Stat. § 8059) any other construction would not only defeat its object, but lead in some cases to strange and obnoxious results.    *    *    *

"The proper construction to be given to this section of the statute is this: In all cases where judgment is rendered in favor of the plaintiff in the principal suit a garnishee is not discharged or entitled to judgment of discontinuance by a change of parties to the record, where the claim was one that was garnishable at the time of service of process."

In *Folkerts* v. *Marysville Land Co., supra,* affirming the *Bethel Case, supra,* this court had under consideration the question whether 3 Comp. Laws 1929, § 14021 (Stat. Ann. § 27.665), providing that no action shall be defeated by nonjoinder or misjoinder of parties, applied to garnishee proceedings. It was there held that a garnishee defendant was not entitled to have the garnishment proceedings dismissed although in the principal suit one of two parties plaintiff was dropped from the suit. After quoting the above language from *Bethel* v. *Judge of Superior Court, supra,* the court said:

"The principal question raised by the assignments of error is whether or not a change of parties in the principal suit entitles the garnishee to dismissal. It is conceded that the proceeding in garnishment is a harsh remedy and the provisions of the statute must be followed (*Foreman Brothers Banking Co.* v. *Handy*, 229 Mich. 635) but denied by appellants that what was done amounted to a discontinuance of the principal case, citing *Bethel*

v. *Judge of Superior Court,* 57 Mich. 379.  That case was commenced against two principal defendants, but the judgment was taken against only one of them because the other was an infant.  \*  \*  \*

"The bench law of that decision has since been ratified in effect and strengthened by our judicature act as follows:

" 'No action at law or in equity shall be defeated by the nonjoinder or misjoinder of parties.  New parties may be added and parties misjoined may be dropped, by order of the court, at any stage of the cause, as the ends of justice may require.'  3 Comp. Laws 1915, § 12364.

"This is in no sense a new cause of action.  The important question, so far as the garnishee defendant is concerned, is whether it had anything of the principal defendant's which was garnishable.  That question is not affected by whether there was one or two plaintiffs in the principal case."

Our conclusion is that in the case at bar against the principal defendant, the court had jurisdiction of the defendant *in personam.*  We do not here have under consideration the question of the right to judgment against the garnishee defendant.  The jurisdiction of the court to render judgment against the garnishee defendant is an issue to be determined in the garnishee proceeding.  3 Comp. Laws 1929, § 14858 *et seq.,* as amended (Stat. Ann. and Stat. Ann. 1942 Cum. Supp. § 27.1856 *et seq.*).

Defendant claims that a partnership existed between the plaintiffs, or that they were doing business under an assumed name; that the court should have directed a verdict for defendant, or submitted it as a question of fact to the jury.  It is conceded that no certificate of partnership had been filed (2 Comp. Laws 1929, § 9929 [Stat. Ann. § 20.111]), and that no certificate of doing business under an

assumed name had been filed (2 Comp. Laws 1929, § 9825, as amended by Act No. 274, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 9825, Stat. Ann. § 19.821]). The original contract with Collier Construction Company was in the sole name of James W. Fraser, Jr. The testimony showed that James W. and William J. Fraser were to share "on a 50-50 basis." They were not similarly associated together in any enterprise prior to the present construction job, or since. There never was any "Fraser Construction Company." Occasionally others referred to them as "Fraser Brothers" or "Fraser Construction Company," although plaintiffs themselves at no time represented a carrying on of business under either of these names. A joint bank account was opened by plaintiffs in their individual names, as James W. and William J. Fraser, and all checks were signed individually by James W. (J. W.) Fraser or William J. (Wm. J.) Fraser in their own names, not in the name of Fraser Brothers or Fraser Construction Company. Reports were submitted to defendant as to excavation and backfill by "J. W. Fraser." Books of account were kept in the name of James W. Fraser, Jr., but none in the name of "Fraser Construction Company" or "Fraser Brothers." Employer's social security tax returns were made in the name of "James W. Fraser." Defendant's checks for payment of work were made payable to James W. Fraser or J. W. Fraser. Defendant pleaded the alleged copartnership or doing business under an assumed name as an affirmative defense, wherefore suit could not be maintained without filing a certificate. *People, for use of McDonell,* v. *Fidelity & Deposit Company of Maryland,* 232 Mich. 238. The burden of proving a copartnership or doing business under an assumed name was on the defendant. *Block* v. *Schmidt,* 296 Mich. 610. We agree with the

trial court that the testimony failed to show any fair inference from which the jury might find plaintiffs to be copartners or doing business under an assumed name. The court was not in error in so deciding.

During the course of the trial the defendant moved that the court require the plaintiffs to elect whether they claimed recovery on an express or an implied contract, and claims that the court should have limited recovery, if any, to express contract.

The original contract, addressed to James W. Fraser, Jr., provided that the subcontractor was to dig the abutment holes for the steel towers (7′ x 4′ x 4′) for $5 each, and to do the backfilling and tamping of these holes for $2.50 each. Plaintiffs procured the necessary tools and equipment from their father, who was a contractor, and started the work. They both testified that they at once discovered that the terrain was not as represented, that instead of sand and gravel they found hardpan, hard clay, rock, and water holes. They also testified that the Consumers Power Company's superintendent on the job insisted that the holes be made larger and deeper; that they conferred with the Collier Construction Company's superintendent on the job, that he admitted that the holes were much larger than contemplated, that they had made a mistake, that plaintiffs should go to Cleveland for a new contract, and told them to go ahead with the work and take the matter of cost up with Mr. Collier in Cleveland. Plaintiffs testified that they did so, held a conference with Mr. Collier, that they told him it was necessary to have a new agreement written, told him what had been discovered on the job, that he told them he had a time limit in which to erect the power line, asked them to go ahead with the work, agreed that they would not lose any money on the job,

stated that he was responsible, that they could take his word for it, and offered to put up $5,000 as a guaranty for that purpose. William J. Fraser testified:

"Mr. Collier said that if we wanted he would rewrite our agreement, but he also asked us to take his word, to continue the work on his word. He called on the men who were in the room to witness the statement that no contractor, no subcontractor that ever did any work for him ever lost any money. He asked us to take his word as a guarantee that we would not lose any money. He asked us to continue the job, telling us that it was to his advantage as far as future work with the Consumers Power Company was concerned, to his advantage to do a good job, to get the job completed on schedule; and on that basis asked us to continue on his word."

James W. Fraser, Jr., testified:

"Q. Did you go into Cleveland sometime after that?

"A. Yes, Bill and I went in to this meeting in Mr. Collier's office.

"Q. For what purpose did you go to Cleveland?

"A. To discuss this new contract or agreement. The new agreement referred to by Mr. Morgenstern and Mr. Jensen. Mr. Morgenstern said he would arrange the appointment. * * * and he (Mr. Collier, president of defendant company) said, 'What do you boys want?' We said, 'We came for —in for a new agreement.' Well, Mr. Collier said —he said, 'You can have that.' He said, 'But, if you want it, you can have it, but,' he turned to everybody sitting in the room and said, 'I think my reputation is such that it is not necessary.'

"Q. Are you referring to a written contract?

"A. Well, we came in for a new agreement.

"Q. A written contract?

"A. Yes.

"*Q.*  What else did he say?

"*A.*  And he said, 'Well—well, it would not be necessary,' and he turned to these men in the room and he said, 'Think you men around here can verify that no subcontractor that has worked for me, that has ever worked for me, that has ever lost money knowing to me,' and he said, 'I think my word is my bond,' and he turned to these men and they all shook their heads yes, and he said, 'Just to make that sound better to you,' he said, 'I will dig down in my pocket to the extent of $5,000 to assure that, that you won't lose money on this job.' He said, 'If you boys just go ahead, all I want is for you to keep ahead of me so I can complete this job on the date required by the Consumers Power Company.'

"*Q.*  Did he say anything else?

"*A.*  And he said—he says, 'Are you satisfied that my word is sufficient, or do you want this new, written contract?' 'Well,' he said, 'Pat'— or pardon me—'Mr. Collier, if that is the way it is, why, we will co-operate with you.'

"*Q.*  Did he say anything about keeping records?

"*A.*  Well, we did not discuss records at that time, except that he said—he did say, 'Keep measurements and so on on these holes,' yes. That was not discussed very heavily.

"*Q.*  Did he say anything about keeping track of the type of soil?

"*A.*  Yes. We—he said, 'Just keep a record of everything you do up there,' is the way he put it."

The defendant kept a superintendent on the job, with Consumers Power Company representative, and directed or approved the work as it progressed. Plaintiffs testified they continued the work, finished the job under the oral understanding, kept accounts of their expenses, the additional costs, the amount of additional excavation, the amount of wet excavation, sand and gravel, hardpan, hard clay, rock, drilling and dynamite, concrete, sheeting and back-

fill. They received total payments of $9,930.35, the defendant refused to make further payment and plaintiffs started suit. The declaration was on the common counts with a bill of particulars. At the trial plaintiffs claimed recovery on the basis of the so-called second or oral contract entered into after the work was started. They claimed at the trial an express oral contract had been entered into to pay them the reasonable value of the work, and that there was an implied promise ·by defendant to pay them for the work on the basis of the reasonable value of the work performed without regard to the limitations expressed in the original written contract. The defendant denied that there was any second or oral contract and also denied that the plaintiffs would be entitled to recover on the basis of reasonable value or reasonable cost of the work performed either by reason of the additional difficulties encountered on account of terrain, or by reason of the Consumers Power Company requiring larger or deeper holes to be excavated. In that regard the defendant claimed that the contract was one known by custom in the contracting business as an "unclassified" contract, that any additional excavation should be paid for only on the yardage basis established by the original contract for four holes 7' x 4' x 4', that any additional removal of dirt should be paid for at $1.809 for each cubic yard. Plaintiffs claimed the second or oral contract was that they should be paid on the basis of reasonable value for the additional excavation. Thus there was an initial issue of fact raised as to whether a second or oral contract had been entered into and, if so, what it was. The court refused to require plaintiffs to elect as to whether they were relying upon an express second contract or an implied contract to pay the reasonable value of the work per-

formed.  Plaintiffs contend that an undertaking to pay the reasonable value of the work was entered into when they met with Mr. Collier in Cleveland for the purpose of adjusting the unexpected difficulties which had arisen in connection with the job. They claim that this had the effect of entirely superseding the original contract.  They claim that they had the right to go to the jury on the disputed issue of fact as to whether a subsequent oral contract had been entered into and what it was, and that if the jury found there had been no express oral contract they had the right to go to the jury on an implied contract on the ground that they had finished the job and that it had been accepted, therefore, they would be entitled to recover the reasonable value thereof under the common counts.

In charging the jury the court adequately explained the divergent claims of the parties, that the plaintiffs claimed that subsequent to entering into the original contract the parties made an entirely new contract that if the plaintiffs would go on and complete the job they should lose no money on the subcontract, that plaintiffs claimed this was equivalent to agreeing that they should receive the reasonable value of the work done by them; and that the plaintiffs also claimed that if the evidence failed to establish such an entirely new contract, then they had been required by the defendant to do extra excavation on the job not in contemplation of the original agreement, of a different kind and type, and that, therefore, the law would imply a contract that the defendant should pay the reasonable value of such extras.  The court explained that the defendant claimed that the original contract had never been abrogated, but that there was a subsequent express contract between the parties that all overage of yardage in the way of extras required by the de-

fendant was to be paid for at the same rate as the original contract price, namely, $1.809 per cubic yard. The court said:

"It is evident from a statement of these claims that the parties are not in agreement as to the facts of what the contract really was, and this raises a question of fact for your determination at the outset, namely: What was the contract which these parties entered into? Secondly: how was that contract modified by the subsequent agreement of the parties if it was so modified?"

The court further charged the jury that if they found that the original contract was done away with by the express agreement of the parties and a new agreement made, then the new contract would take the place of the original contract and that it would be the equivalent of providing that the plaintiffs should receive the reasonable value of the excavation work done by them for the defendant at its request. The court in understandable language explained the different theories of the parties as to whether the damages should be based upon defendant's claim of an unclassified contract or plaintiffs' claim of a classified contract; that if the jury found as claimed by the defendant that the original contract was never abrogated, but that there was a subsequent express contract that all over-yardage of excavation was to be paid for at the original contract price, then such a contract would control, and in that event the plaintiffs should recover only upon the original contract price of $7.50 for each hole and at the rate of $1.809 per cubic yard for the overage; that if a second or oral contract was made, plaintiffs could recover the reasonable value of the work. The court explained what was meant by reasonable value, and charged the jury that "I have

permitted quite a wide range of inquiry into the cost of these various factors on the theory that cost is always some evidence of value.''

The defendant claims that this manner of submitting the issues of fact to the jury was improper and reversible error; that plaintiffs should have been required to elect whether to go to the jury on the theory of an express contract or an implied contract. It is difficult to see how the issues of fact could have been properly submitted to the jury in the manner contended for by defendant. The defendant denied that any second contract had been entered into as claimed by plaintiffs and thus raised this issue of fact, which was submitted to the jury. The defendant claimed that if the jury should find there was a second contract, plaintiffs could recover for the over-yardage of excavation only on the basis fixed in the original written contract, namely, $1.809 per cubic yard. Plaintiffs claimed that if the jury found a second contract and that it was as plaintiffs testified to, they would be entitled to the reasonable value of the work that had been done; that in any event, the work having been fully performed, they were entitled to recover the reasonable value. Plaintiffs' costs and expenses were received in evidence for the purpose of showing the reasonable value; defendant introduced expert testimony to the contrary. The testimony was admissible.

It may be conceded that this court early said that if there was an express contract, none could be implied. *Galloway* v. *Holmes*, 1 Doug. (Mich.) 330. However, as early as 1873, in *Begole* v. *McKenzie*, 26 Mich. 470, where the declaration was confined to the common *indebitatus* counts in assumpsit, the defendant in error gave in evidence a special contract and insisted that recovery could be had only upon it. This court held that where the contract

had been fully carried out by the plaintiff and nothing remained but a duty on the part of the defendant to make payment, the amount might be recovered at the election of the plaintiff either under a general count for goods sold and delivered, or under a special count based on the agreement. In *McQueen* v. *Gamble,* 33 Mich. 344, this court held that the plaintiff under a declaration on the common counts could recover for work and labor although the defendant claimed that there was an express agreement between them as to the rate of pay that plaintiff was entitled to.  This court said:

"The court charged the jury that if they believed the plaintiff, then the contract was for a year's hiring, including the four months, and in such case there could be no recovery; that the action should have been brought on the contract, and not on the common count.  He further charged, in substance, that if the jury believed the defendant, then the plaintiff was not entitled to recover.  The instruction was erroneous.  *  *  *  If the jury believed the plaintiff's evidence he had a valid cause of action under the general count for work and labor."

In *Engle* v. *Campbell,* 42 Mich. 565, this court said:

"We have no means of knowing whether the finding of the jury was based on a disbelief of the contract as alleged by Engle, or on a belief that it had not been carried out.  They found against plaintiffs. The only important error alleged is that the court confined the right of recovery to the particular contract as sworn to by Engle, and precluded recovery if that varied from any other contract if one was made and performed.

"This would be proper if the suit had been on a declaration or bill of particulars distinctly describing it.  But the declaration was on the common

counts, and we are not informed that there was any bill of particulars. Upon the conflict of testimony on various points plaintiffs had a right to go to the jury upon any contract which made out to the satisfaction of the jury a fulfillment giving a cause of recovery.''

The opinion of this court in *Van Fleet* v. *Van Fleet,* 50 Mich. 1, seems to apply to the circumstances of the case at bar. We quote from the opinion:

''Of the many errors assigned, a few only demand attention. The respondent insisted that if the evidence showed an express contract between the parties there could be no recovery for the labor on an implied contract. *Galloway* v. *Holmes,* 1 Doug. (Mich.) 330; *Peters* v. *Gallagher,* 37 Mich. 407. The principle is plain enough, but it has no application here. The plaintiff relied upon an express understanding that he should be paid for his services whether he received the land or not; and he also claimed that, if the evidence failed to show an express agreement to that effect, it showed facts from which such an understanding must be implied. If the jury was with him on the first branch of the case, he would recover on the express contract; if on the second branch of the case, he would recover on the contract implied by the circumstances, no express contract being made out. But the claimant did not pretend that a contract could be implied for services which were covered by an express contract, and the instructions to the jury conceded that if an express contract was made out, the case must be governed by it.''

*Way* v. *Root,* 174 Mich. 418, was an action brought to recover damages for breach of a land contract which was in writing. The plaintiff's declaration contained both the common counts and special counts on the contract. Plaintiff had verdict and

judgment, which was affirmed by this court, where
we said (p. 421):

"At the trial, after counsel for plaintiff had made
his opening statement to the jury, counsel for de-
fendant moved the court to require plaintiff to make
an election of counts, saying:

" 'Now, they must either go to trial upon the con-
tract, or they must go to trial upon the common
counts in assumpsit. They cannot do both.'

"This motion was overruled, and error is as-
signed on such ruling; it being defendant's claim
that the counts are inconsistent, and the case was
submitted to the jury on a 'double-barreled propo-
sition.' *   *   *

"Counsel for plaintiff in his opening statement
said:

" 'The plaintiff relies on his contract. This is
not a suit brought on the theory of rescission. This
is a suit brought on the theory of full and complete
performance on our part and failure to perform on
the part of the defendant, and for damages by rea-
son of his failure to perform.' *   *   *

"The counts in this case cover the same cause of
action and recovery could be had under either on
the same testimony according as the jury found the
facts to be. The special count sets up the contract,
full performance by George Way, failure to per-
form by defendant Root, and assignment of the con-
tract to plaintiff. If the jury found from the testi-
mony that defendant acted in bad faith, the measure
of damages would be, under this count, the value of
the property contracted to be conveyed at the time
of the breach, if in good faith, the money paid with
interest, and recovery would be limited to the latter
amount under the common counts. Where the testi-
mony is along the same lines and a portion of the
facts in relation to which there is testimony would
justify one verdict, and all the facts claimed would,
if found by the jury, justify a larger verdict, the

plaintiff is not required to prejudge what he will be able to convince the jury of, but may plead to meet the contingency, so long as his position is not inconsistent and misleading. In such case an election of counts is usually discretionary. *Cook* v. *Perry,* 43 Mich. 623; *McLennan* v. *McDermid,* 50 Mich. 379.''

In *Case* v. *Rudolph Wurlitzer Co.,* 186 Mich. 81, plaintiff brought assumpsit on an express written contract which the defendant denied. The declaration was also on the common counts. This court said:

''In the plaintiff's declaration there is found a special count, based on the express contract, and there are also found the common counts. The case was submitted to the jury upon the theory that the plaintiff might recover either on the special count on the contract, in which case the plaintiff would be entitled to 20 per cent. commission on the list price, or under the common counts, on the theory that, if it was found that plaintiff's assignor was the procuring cause of the sale, the plaintiff would be entitled to recover the usual and customary rate of commission, which in the instant case, it was testified to, was 10 per cent.

''It is clear, from the amount awarded plaintiff by the jury, that the claim of the plaintiff under the special count of the declaration was entirely disregarded, and that the amount allowed plaintiff was the 10 per cent. commission on the price paid for the instrument and interest thereon. It is the contention of the appellant that under the facts in this case the plaintiff could recover only upon the contract relied upon in the declaration, and that the defendant's request to require the plaintiff to elect between the special count and common counts, which was denied by the court, should have been granted; that there is no proof of any agency between the parties, excepting by virtue of the contract; and,

the jury having found against the existence of any such contract, that there is nothing in the record upon which to base the verdict arrived at. We do not think that this position of the appellant is tenable. The defendant strenuously disputed the existence of such a contract, and the question of fact thus brought into issue was determined by the jury against the plaintiff. In the case of *Hathaway* v. *Vaughan*, 162 Mich. 269, cited by the appellant, the existence of an express contract was not disputed, and it was held that the existence of an express contract executed upon both sides precludes recovery upon an implied contract relating to the same matter. Here, however, the existence of the contract was in dispute, which clearly distinguishes the case before us from the case just referred to."

In *Re Moon's Estate* (syllabus), 219 Mich. 104, this court held:

"Where a claim against an estate for services was asserted on both express and implied contracts, the trial judge was not in error in instructing the jury that if no express contract was found then there might be a recovery on a contract implied by the circumstances."

In *Sharrar* v. *Nestle*, 222 Mich. 538, suit was brought to recover a commission for the sale of defendants' farm. The declaration was on two counts, the first count for a breach of contract, and the second the common counts in assumpsit. This court held (syllabus):

"Where a special contract has been fully executed by one party and nothing remains to be done but pay money, recovery may be had on the common counts."

In *Shambleau* v. *Hoyt*, 265 Mich. 560, the case was in assumpsit for sums due on an implied promise

of the defendants in connection with certain stock transactions.  The declaration contained four counts.  The first count was in assumpsit based upon waiver of an alleged fraud claimed to have been perpetrated by defendant in inducing plaintiff to purchase certain stock through false representations.  The second count alleged:

"For a consideration defendants agreed with plaintiff that if she would purchase this stock they would 'guarantee and indemnify plaintiff against any loss.'"

The third count was on the common counts in assumpsit, and the fourth count alleged that plaintiff's purchase of the stock was induced by defendants' false representations wherefore an implied promise was imposed upon the defendants to pay the amount of her loss.  Plaintiff had judgment in assumpsit.  This court said (p. 570):

"Under the circumstances here involved prejudicial error was not committed by the refusal of the circuit judge, who tried the case without a jury, to compel an election by plaintiff between the second and fourth counts of her declaration.  Each of these counts is in assumpsit.  Notwithstanding the trial judge seems to have taken a different view, we think the second count which sets forth a guaranty asserts a right of recovery based upon alleged contractual relations.  The fourth count is also in assumpsit.  Here the right of recovery is asserted under the statute* and is incident to the waiver of an alleged tort.  As noted above, the amount of recovery is the same under each of these counts.  The trial judge was justified in declining to compel an election by plaintiff."

* See 3 Comp. Laws 1929, § 14007 (Stat. Ann. § 27.651).—REPORTER.

Under the circumstances of this case, the court was not in error in denying defendant's motion that plaintiffs be required to elect as to whether plaintiffs relied upon an express or an implied contract. Under the declaration on the common counts, the issues of fact as to the contract and its purport were fairly submitted to the jury.

The court did not err in allowing testimony of cost of excavation as evidence of reasonable value. Defendant was allowed full latitude to show, by expert testimony of others in similar construction work, that the cost as claimed by plaintiffs was not the reasonable value of the work.

We have examined the record with reference to the alleged grounds for reversal for errors in receiving or excluding testimony. We find no reversible error. The case was ably tried by counsel for both parties, three weeks were consumed in taking testimony, and the condensed record before us covers nearly 800 pages. There was a sharp conflict of testimony, and the credibility of witnesses was for the jury. The verdict was well within the range of the testimony and not excessive under the proofs adduced, nor contrary to the great weight of the evidence. We have examined the other claims of error and find nothing to require a reversal.

Affirmed, with costs to appellees.

CHANDLER, NORTH, STARR, BUTZEL, and SHARPE, JJ., concurred with BOYLES, C. J.

WIEST, J. (*dissenting*). The initial and essential procedure to vest jurisdiction was issuance of a writ of garnishment upon a proper showing of the actual parties creditors of the principal debtor. The affidavit upon which the writ of garnishment issued was by plaintiff James W. Fraser, Jr., and averred

the principal defendant was indebted to him in the sum of $23,146.36.   Later a declaration of like import was filed.   In its answer thereto, by way of special defenses the principal defendant alleged:

"That the said suit was not brought in the name of the real party in interest.

"That plaintiff individually cannot, and is not entitled to, maintain this suit or to recover against the defendant for any of the matters set forth in his declaration or bill of particulars; that the contract respecting the same was made with, and the said work was done and performed under and pursuant to said contract by the said Fraser Construction Company, a firm or copartnership consisting of William J. Fraser and James W. Fraser, Jr., members or copartners."

The original plaintiff confessed, by motion for and obtaining a court order adding as a necessary party plaintiff William W. Fraser, that he had no right to sue out a writ of garnishment as sole party plaintiff.   The proceeding by garnishment as here under 3 Comp. Laws 1929, § 14885 (Stat. Ann. § 27.1883), is special, *in rem,* and to be strictly construed in order to give jurisdiction.   The general statute, 3 Comp. Laws 1929, § 14021 (Stat. Ann. § 27.665), relative to nonjoinder and misjoinder of parties cannot be employed in the instance at bar where jurisdiction of the court rests upon invocation by the proper person.   When the court added plaintiff's brother as a plaintiff the case was no longer that brought under the special garnishment statute and jurisdiction of the court ended.

The judgment should be reversed, with costs to defendant.

Bushnell, J., concurred with Wiest, J.