SMITH v. BAUMGARTEN.

1. PLEADING—AMENDMENT AFTER VERDICT OR JUDGMENT—LEAVE OF
   COURT.
   If necessary, by leave of court a declaration may be amended
   after verdict or judgment to add a new count to support cause
   of action proved that should have been pleaded (Court Rule
   No. 19, § 4 [1933]).

2. SAME—AMENDMENT OF DECLARATION AFTER VERDICT AND JUDG-
   MENT.
   Notwithstanding declaration in action to recover damages for
   breach of contract was inartistically drawn, it need not be
   amended after verdict and judgment where the issues were
   sharply defined and argued by both sides (Court Rule No. 19,
   § 4 [1933]).

3. CONTRACTS—BUILDING CONTRACTS—DAMAGES—QUESTION OF FACTS
   —EVIDENCE.
   In action to recover damages for breach of written construction
   contract to erect a brick structure, evidence presented ques-
   tions of fact for jury and supported its verdict for plaintiff
   in that agreement was silent as to use of used brick but it
   was admitted by plaintiffs that some was to be used and ad-
   mitted by one of the defendants that he would make it right
   and pay for the greater amount of used brick and smaller
   pieces of used brick.

Appeal from Hillsdale; Arch (Charles O.), J.
Submitted January 8, 1946. (Docket No. 5, Calen-
dar No. 42,909.) Decided March 4, 1946.

Assumpsit by Don Smith and another against
Joseph Baumgarten and another, doing business as
Hillsdale Manufacturing Company, for damages for

breach of written agreement. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*James T. Sloan (K. W. Huggett,* of counsel), for plaintiff.

*Chase & Walworth, Decker & Golden* and *B. D. Chandler,* for defendants.

Butzel, C. J. Plaintiffs entered into a written agreement obligating themselves for the sum of $6,000 to do the masonry work on a factory, boiler house and smokestack to be built for defendants in Hillsdale, Michigan. Defendants were to make payments from statements furnished them by plaintiffs each Friday night, and plaintiffs were to receive 60 per cent. of their weekly salary each week, and, when the contract was completed, they were to receive the difference between the amount of the contract price and the amounts previously paid to them. Several weeks after the contract was signed but before the actual construction was begun, the specifications as to the main building were changed. The original specifications called for main building 336 feet long and 224 wide. The size of the building was changed so as to increase its length 97 feet 8 inches, decrease its width 15 feet 4 inches, and increase its height 1 foot. No written agreement of any kind was made as to the extra compensation for the added size of the building. Defendant testified, however, that he imagined that "they (plaintiffs) assumed they would be paid pro rata of the original contract." About two months after the original contract was entered into, defendants wrote plaintiffs:

"For every brick you lay over and above your contract, you will get fully paid for and you know it."

The main building was about two-thirds completed when a dispute arose between plaintiffs and defendants. Plaintiffs had been continually complaining about broken brick that was being furnished them, and the defendants also found fault because the job was not progressing rapidly enough. Plaintiff Smith testified that he repeatedly asked for a statement from defendants. On Friday, June 23, 1939, plaintiff demanded around noon that if plaintiffs were not furnished a statement shortly after noon, by 1:30 or 2 p.m., they would take their men off the job. They did take their men off the job, but received a statement over the weekend showing a balance of $707.10 in their favor. When they returned the following Monday, defendants refused to permit them to continue the job. The jury rendered a verdict in favor of plaintiffs for the amount shown by the statement.

Defendants on appeal claim that under the declaration plaintiffs could not recover. Plaintiffs set forth in the declaration the making of the contract, the changing of the plans so as to call for a larger building, that new materials were to be furnished for the construction of the building, but used and broken bricks of odd sizes taken from wrecked buildings were furnished instead, thus increasing the amount of labor required. They further alleged that a statement had been given them by defendants showing $707.10 due plaintiffs, and that defendants refused to permit plaintiffs to continue on the job, and further refused and neglected to pay plaintiffs the amount claimed. The declaration is inartistically drawn but nevertheless the issues were sharply defined and argued by both sides, and while the declaration could even be amended at this time under Court Rule No. 19, § 4 (1933), we do not think it necessary. Notwithstanding that defendants claim

they made out a stronger case, we cannot hold that the verdict was not fully supported by the evidence, nor that there were not questions to be submitted to the jury. Much of the difficulty in the dispute arose from the fact that defendants furnished plaintiffs with a large quantity of small broken brick which from its very nature was difficult to lay and required far more labor than would have been required if unbroken brick had been furnished.

Plaintiffs claim that they have done more work on the contract as orally modified than that for which they have been paid. Plaintiff Smith testified as follows:

"*Q.* Now you say, you did talk with Mr. Baumgarten about those broken bricks?

"*A.* Several times.

"*Q.* What did he say?

"*A.* He said, 'That is all I can get, it is just a day's work. Go ahead and use them. I will make it right, I will pay for every brick.''

We also quote from plaintiff Whittleton:

"I am not claiming that we should have more money for laying three-quarters of a million brick than you would owe us for laying a million brick. I was hired to lay a million brick for $6,000, but not pieces. We did not lay three-quarters of a million. No, I said millions and millions of pieces, because what we used was brought in by truck loads this size. (Indicating.) You can't count millions if it is built on rubble. Nobody lays rounded pieces about so. (Indicating.) Probably three, maybe four inches. The greater part and majority of the brick was one and two inches."

Both plaintiffs admitted in their testimony that in the oral discussions leading to, and therefore presumably incorporated in the written contract, it was contemplated that "some" used brick would be

employed. However, no stipulation as to the amount was incorporated in the contract, nor was it therein mentioned that used brick was to be employed. There is also Baumgarten's admission, quoted above, that he would "make it right" and "pay for every brick."

Thus there was testimony presented so that the jury could and presumably did find that a greater amount of used brick and smaller pieces of used brick were furnished than contemplated in the original contract, and an oral promise was made to pay for this extra work. A question of fact was presented which was properly submitted to the jury. The verdict was not contrary to the great weight of the evidence. There was sufficient evidence to sustain the verdict for the plaintiffs. See *Fraser* v. *Collier Construction Co.*, 305 Mich. 1, where a similar question was presented, and the verdict of the jury for the plaintiff was affirmed.

Judgment affirmed, with costs to plaintiffs.

CARR, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.