DTM RESEARCH, L.L.C., Plaintiff,

v.

· AT & T CORPORATION, Defendant.

Civ. No. PJM 96–1852.

United States District Court,
D. Maryland,
Southern Division.

April 9, 1998.

Ty Cobb, Ralph S. Tyler, Hogan & Hartson, Baltimore, MD, for Plaintiff.

David B. Hamilton, Sharon A. Snyder, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION & ORDER

MESSITTE, District Judge.

### I.

AT & T Corporation ("AT & T") has filed a Motion for Leave to File a Third–Party Complaint Against Alta Analytics, Inc., Alta Management, Inc. and Alta Ventures, Inc. (collectively "Alta").[1] DTM Research, L.L.C. ("DTM") opposes the Motion and AT & T has filed a reply. AT & T's Motion will be DENIED.

### II.

The relevant procedural history of this case is this:

In 1996, DTM brought suit against AT & T claiming that AT & T misappropriated DTM's process for deriving from AT & T call records certain valuable information about the "work at home" market, i.e., persons who work at home. DTM claims that this process, known as "Orca Blue," was a DTM trade secret and that AT & T misappropriated it after DTM disclosed it to AT & T during a 1995 contract solicitation.

In October 1996, AT & T filed a Motion for Summary Judgment contending that DTM never disclosed any trade secret to AT & T. Largely due to discovery disputes, the brief-

---

1. As DTM points out, AT & T proposes in its motion to join three allegedly affiliated third-parties. Assuming without deciding that these entities are related, the Court will refer to all three as "Alta."

ing cycle with regard to the Motion was extended over several months. In October 1997 AT & T sought to "supplement"[2] its Motion by adding the argument that, to the extent that AT & T might have obtained any trade secrets as alleged by DTM, it did so lawfully pursuant to the so-called "Sea Otter" agreement AT & T had with Alta. DTM moved to strike the supplement and on October 23, 1997 Magistrate Judge Connelly granted DTM's Motion to Strike. AT & T objected to Magistrate Judge Connelly's order but this Court, by Order dated November 25, 1997, overruled AT & T's objections, indicating that all arguments touching on the AT & T–Alta Sea Otter contract in AT & T's reply brief to its Motion for Summary Judgment would be disregarded. The Court noted, however, that its ruling was "without prejudice to AT & T's right to renew its 'Sea Otter argument' at the conclusion of full discovery in the event that the Court [denied] AT & T's pending motion for summary judgment on trade secret issues." AT & T's Motion for Summary Judgment on trade secret issues was subsequently denied and the present motion followed.

## II.

■ A motion for leave to file a third-party complaint filed outside of the post-answer ten-day period in which third-party complaints may be filed of right addresses the Court's sound discretion. See Fed. R.Civ.P. 14(a); *U.S. v. Dobrowolski*, 16 F.R.D. 134 (D.Md.1954). In exercising this discretion, courts balance "the elimination of delay and circuity, against the danger of prejudice to the plaintiff." *Hicks v. Long Island Railroad*, 165 F.R.D. 377, 379 (E.D.N.Y.1996); *FDIC v. diStefano*, 839 F.Supp. 110, 120 (D.R.I.1993). Although courts have noted a strong interest in promoting efficiency by trying related claims together, where the addition of a third-party defendant would cause undue delay or complication in the trial of the underlying case, such impleader will not be allowed. *Hicks*, 165 F.R.D. at 379–380 (disallowing impleader where discovery was substantially completed

in the underlying case, which was already 15 months old).

■ The proposed impleader in this case would entail significant delay, entailing a new wave of discovery (undoubtedly attended by the same sort of discovery disputes that have characterized this litigation) and almost certainly another round of dispositive motions. As it stands, the trial of this case, which involves events that largely took place in 1995 and early 1996, will not occur until well into 1999—nearly three years after suit was filed. Allowing AT & T to add Alta at this point would carry the case considerably beyond that time frame. See *In re "Agent Orange" Product Liability Litigation*, 100 F.R.D. 778, 781 (E.D.N.Y.1984) (allowing impleader would likely engender additional discovery, "adding to the cost of all present parties and frustrating their reasonable expectations of prompt dispositions"); *Handlos v. Litton Industries, Inc.*, 51 F.R.D. 300 (E.D.Wis.1970) (refusing to allow impleader where trial would already not occur until 2½ years after commencement of suit and underlying events were already more than 3 years old).

Moreover, addition of Alta would significantly complicate a case that is already complex—involving as it does questions of whether DTM's "Orca Blue," a process of analyzing call data to derive information about a certain market segment, was a "trade secret" and whether AT & T was capable of and did in fact "reverse engineer" Orca Blue. These highly-technical questions, which call for dozens of fact and expert witnesses, will be taxing enough without adding the host of new issues arising out of AT & T's separate agreement with another entity based on a wholly unrelated set of theories of contractual indemnity and duty to defend, contribution and negligence. See *Manley Bennett, McDonald & Co. v. St. Paul Fire & Marine Insurance*, 792 F.Supp. 1070, 1074 (E.D.Mich.1992), *aff'd*, 33 F.3d 55 (6th Cir. 1994).

Beyond this, AT & T offers no good excuse for why it failed to implead Alta at a much earlier stage of the proceedings. AT & T

**2.** This was actually AT & T's second proposed supplement to its Motion.

concedes that although it notified Alta of the case in November 1996, it did not seek to invoke Alta's alleged duty to defend in October 1997 and did not seek to add Alta as a party until February 1998. AT & T's motion, therefore, comes approximately 20 months after the commencement of the suit, 15 months after it notified Alta of the existence of the suit and 5 months after Alta denied AT & T's demand for defense. AT & T's argument that it did not want to implead Alta until its summary judgment motion was decided is simply unconvincing. *Hicks,* 165 F.R.D. at 380; *In re "Agent Orange" Product Liability Litigation,* 100 F.R.D. at 781 (bald assertion that it was "inappropriate" to implead a third-party at an earlier date is insufficient).

The Court recognizes that its November 25, 1997 Order specifically held out the possibility that AT & T would have the opportunity to raise the Sea Otter argument again. However, the Court did not address nor did it mean to imply that AT & T might open an entirely new case by adding new parties, with augmented discovery, a new round of dispositive motions and immense trial delay. The Court envisioned only that AT & T might be given the opportunity to argue, as a defense to DTM's claims, the existence of the Sea Otter contract as proof that there was no misappropriation.[3] Finally, the Court notes that AT & T loses no right of action against Alta by reason of the Court's denial of its motion. AT & T can still pursue a separate suit against Alta for contribution or indemnification should DTM prevail in this litigation. *Hicks,* 165 F.R.D. at 380. The present case needs to stay on track. The Court is unwilling to permit the major detour that AT & T proposes.

### ORDER

Accordingly, it is this 9th day of April, 1998

ORDERED that Defendant's Motion for Leave to File Third–Party Complaint is hereby DENIED.

---

3. The Court recognizes that its second scheduling Order, entered on January 7, 1998 after the denial of AT & T Motion for Summary Judgment, prescribed a February 20, 1998 deadline for joinder of additional parties, and that AT & T's motion to add Alta is timely in that respect. However, the Court is in no way bound by this boilerplate language to allow any proposed joinder filed before the deadline—especially where the deadline was imposed pursuant to a second scheduling order that in no way altered well-established facts that made joinder appropriate at a much earlier date. See *In re "Agent Orange" Product Liability Litigation,* 100 F.R.D. 778, 780 (E.D.N.Y.1984) (in determining delay, relevant inquiry is when party seeking impleader had notice of need for impleader).